Norman GOLDSTEIN, Petitioner,

v.

Clark CLIFFORD, as Secretary of Defense, Harold Brown, as Secretary of the Air Force and Col. Norman F. Herget, as Commanding Officer of the 177th Tactical Fighter Group, Respondents.

Erwin B. GOLDBERG and Lyman G. Peyser, Plaintiffs,

v.

Clark CLIFFORD, as Secretary of Defense, Harold Brown, as Secretary of the Air Force, and Col. Norman F. Herget, as Commanding Officer of 177th Tactical Fighter Group of Air National Guard, Defendants.

Civ. Nos. 732–68, 775–68.

United States District Court
D. New Jersey.

Aug. 21, 1968.

Faulkner & Schmidt, New York City, William V. Eisenberg, Camden, N. J., for plaintiffs.

David M. Satz, Jr., U. S. Atty., by Kenneth P. Zauber, Asst. U. S. Atty., for defendants.

Before HASTIE, Chief Circuit Judge, KALODNER, Circuit Judge, and COHEN, District Judge.

## OPINION

KALODNER, Circuit Judge.

Constitutionality of an Act of Congress empowering the President of the United States, until June 28, 1968, to "order to active duty any unit of the Ready Reserve of an armed force for a period of not to exceed twenty-four months", is challenged in these proceedings instituted by three members of the 177th Tactical Fighter Group, Air National Guard of the United States ("Group").

The Act involved is Section 101(e) of Title 1, Public Law 89–687, October 15, 1966, 80 Stat. 981, 10 U.S.C.A. § 263 note (1967 Cum.Supp.). It reads as follows:

"Notwithstanding any other provision of law, until June 30, 1968, the President may, when he deems it necessary, order to active duty any unit of the Ready Reserve of an armed force for a period of not to exceed twenty-four months".[1]

On January 26, 1968, the President issued Executive Order No. 11,392,[2] ordering the Group to active duty, pursuant to the authority vested in him by Section 101(e).[3]

The main thrust of the challenge made to the Executive Order is premised on the contention that the President does not have "inherent power" to "mobilize" the Ready Reserve; that Congress alone is endowed by the Constitution in Article 1, Section 8[4] with the power to declare a mobilization and that it cannot delegate that power to the President, and consequently the Executive Order did not effectuate a valid "mobilization".

On the score of the foregoing contention, the suing members of the Group cite a provision in their enlistment contracts which provides that they can be

1. The 177th Tactical Fighter Group, Air National Guard of the United States, is part of the Ready Reserve. Title 10, § 269.

2. Federal Register, Vol. 33, 1968, page 951.

3. Executive Order No. 11,392 reads in pertinent part as follows:
   "ORDERING CERTAIN UNITS OF THE READY RESERVE OF THE NAVAL RESERVE, AIR FORCE RESERVE AND AIR NATIONAL GUARD OF THE UNITED STATES TO ACTIVE DUTY
   By virtue of the authority vested in me by paragraph (e) of title I of the Department of Defense Appropriation Act, 1967 (80 Stat. 981), and as President of the United States, I hereby order the following units of the Ready Reserve of the Naval Reserve, the Air Force Reserve and the Air National

Guard of the United States to active duty for a period of not to exceed 24 months:
\* \* \* \* \*
(3) 177th Tactical Fighter Group, Air National Guard of the United States."

4. Article I, Section 8 of the Constitution provides in relevant part:
   "The Congress shall have Power to \* \* \* provide for the common Defense and General Welfare of the United States \* \* \*
   (Clause 11) "To declare War, grant Letters of Marque and Reprisal, and make Rules concerning Captures on Land and Water;
   (Clause 12) "To raise and support Armies, but no Appropriation of Money to that Use shall be for a longer Term than two Years; . . ."

ordered to active duty only "in the event of a mobilization or emergency",[5] and urge that the challenged Executive Order consequently is in violation of the due process clause of the Fifth Amendment to the Constitution.

Discussion of the contentions presented must be prefaced by this statement of their factual and record background:

In Civil Action No. 732–68, Staff Sergeant Norman Goldstein, currently serving on active duty in the Group, has petitioned for a writ of habeas corpus, releasing him from active service, pursuant to the provisions of 28 U.S.C.A. § 2241 et seq., premised on the alleged invalidity of the Executive Order.

In Civil Action No. 775–68, the plaintiffs Erwin B. Goldberg and Lyman G. Peyser, currently serving on active duty in the Group seek injunctive relief under the declaratory judgment provisions of 28 U.S.C.A. § 2201.[6] In this action, plaintiffs sought, and were granted, designation of a three-judge district court pursuant to the provisions of 28 U.S.C.A. §§ 2282 and 2284, which require such designation where an injunction is sought restraining the enforcement of an Act of Congress or the order of any department or agency of the United States.

It appears from Goldstein's petition that he enlisted in the Group on November 26, 1963; has been on active duty since January 26, 1968, and he has been ordered to report to McChord Air Force Base in the State of Washington for deployment to South Korea.

It appears from their joint Complaint that Goldberg enlisted in the Group on August 23, 1965; he has been on active duty since January 26, 1968; he is presently on call for deployment to South Korea; and that Peyser enlisted in the Group on or about August 27, 1965; he has been on active duty since January 26, 1968, and is presently under orders for deployment to Vietnam.

What has been said brings us to resolution of the issues presented by these two actions which have been consolidated for hearing.

■ Upon consideration of the stated undisputed facts and the briefs of counsel, we are of the opinion that Section 101(e) does not constitute an unconstitutional delegation of Congressional power to the President to order the 177th Tactical Fighter Group on active duty on January 26, 1968, and that the President's Executive Order No. 11,392 to that effect, pursuant to the authorization of Section 101(e), is valid and not in breach of the suing parties' respective enlistment contracts.

Congress is empowered by Article I, Section 8, Clause 18,[7] "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers" conferred upon it by Clause 12 of the Article.[8]

■ In Section 101(e), Congress conferred upon the President the limited administrative authority to order any unit of the Ready Reserve to active duty for a period not to exceed 24 months during the ensuing 20½ month period (October 15, 1966 to June 30, 1968).[9]

5. The enlistment contracts provide in relevant part:
   "I understand that I am expected to be available for order to active duty at any time during this enlistment in event of a mobilization or emergency requiring any services".

6. In Civil Action 775–68 plaintiffs also seek a mandamus under 28 U.S.C.A. § 1361 (1967 Cum.Supp.).

7. Clause 18 provides:
   "To make all Laws which shall be necessary and proper for carrying into

Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof".

8. Note 4.

9. We take judicial notice that this delegation occurred when the needs of the military services for manpower were ex-

In Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 (1948), the Supreme Court, in another context, squarely held that Congress, in the exercise of the power conferred upon it by Article I, Section 8, Clause 12, "to raise and support armies * * * ", could delegate its administrative authority thereunder to the executive branch of the government.

In doing so the Court said, at pages 778–779, 68 S.Ct. at p. 1313:

"*A constitutional power implies a power of delegation of authority under it sufficient to effect its purposes.* * * * The degree to which Congress must specify its policies and standards in order that the administrative authority granted may not be an unconstitutional delegation of its own legislative power is not capable of precise definition".

*Lichter* further teaches that in determining whether the administrative authority granted by Congress is constitutional, "the realistic purposes" of the Constitution and its Preamble must be kept "fully in mind". 334 U.S. 782, 68 S.Ct. 1294.

Recently, in Morse v. Boswell, 289 F. Supp. 812 (D.Md. August 6, 1968), the court rejected the contention that Section 101(e) constitutes an unconstitutional delegation of Congressional power to the President.

"The delegation in Section 101(e) of Public Law 89–687 is clearly not unconstitutional. That law does not violate any constitutional precept, be it equal protection of the laws or separation of powers".

There remains for disposition these contentions of the complaining parties ("plaintiffs"): (1) their call to active duty abrogates their enlistment contracts in violation of the Due Process Clause of the Fifth Amendment and (2) assuming the validity of the Executive Order, their detachment from their Group constitutes an illegal "break-up and decimation of a Reserve Unit".

The distilled essence of the abrogation contention is that the enlistment contracts here, which provide that plaintiffs can be ordered on active duty only "in event of mobilization or emergency", must be construed in the light of statutes then in effect, and that the subsequently enacted Section 101(e), which authorizes the President to order the Ready Reserve on active duty "when he deems it necessary", cannot be constitutionally applied to them.

■ We do not subscribe to this contention.

■ The enlistment instrument and the statutory law in effect when it was signed constitute the enlistment contract. Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 435, 54 S.Ct. 231, 78 L.Ed. 413 (1934); Brotherhood of Railway and Steamship Clerks, etc. v. Railway Express Agency, Incorporated, 238 F.2d 181, 184 (6 Cir. 1956); Morse v. Boswell, supra.

Section 673(a), 10 U.S.C.A., in effect at the time the enlistment contracts of the plaintiffs were signed, provides:

"In time of national emergency declared by the President after January 1, 1953, *or when otherwise authorized by law*, an authority designated by the Secretary concerned may, without the consent of the persons concerned, order any unit, and any member not assigned to a unit organized to serve as a unit, in the Ready Reserve under the jurisdiction of that Secretary to active duty (other than for training) for not more than 24 consecutive months". (emphasis supplied)

The subsequently enacted Section 101 (e) exercises the power reserved by Congress in Section 673(a) to make other authorizations for the activation of the Ready Reserve and is thus incorporated into the enlistment contracts. Morse v.

---

traordinary and very large. In this context a delegated power to activate units as deemed "necessary" and for a

limited time, is circumscribed by adequate restrictions and guidelines.

Boswell, supra. Accordingly, the Executive Order 11,392, promulgated pursuant to the authorization of Section 101(e), did not breach the enlistment contracts.

■ The contention that the words "when otherwise authorized by law" in Section 673(a) have no prospective meaning or effect is nothing less than specious. As Judge Kaufman said in Morse v. Boswell, supra, "To this Court, the word 'when' clearly looks to the future".

■ Plaintiffs further contend that a "mobilization" has not occurred within the meaning of their enlistment contracts. The activation of this Group by the President on January 26, 1968 *was* clearly a "mobilization". Plaintiffs seek to limit the meaning of "mobilization" to "total mobilization in time of war" by drawing inferences from remote sections of the United States Code.[10] Surely a much more accurate inference regarding the meaning of "mobilization" can be drawn from Section 262 of Title 10, which sets out the "purpose" of Reserve components. It provides:

> "The purpose of the reserve components is to provide trained units and qualified persons available for active duty in the armed forces, in time of war or national emergency and at such other times as the national security requires, to fill the needs of the armed forces whenever, during, and after the period needed to procure and train additional units and qualified persons *to achieve the planned mobilization,* more units and persons are needed than are in the regular components". (emphasis supplied).

The asserted premise of the contention as to the illegal "break-up" of the Group is that "Various statutes show that Congress intends that the Reserves be treated as units".

■ We have considered the statutes cited in support of that contention, as well as their legislative history, and conclude that they do not proscribe deployment of members of a Reserve unit which has been ordered on active duty.

■ In the absence of such proscription, we are of the opinion that once a Ready Reserve unit is ordered on active duty by a valid Order, as here, a federal court is without power to act with respect to the disposition of either the unit or any of its members.

In Orloff v. Willoughby, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953), it was held that "judges are not given the task of running the Army", and "Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters". In so holding the Supreme Court observed: "We have found no case where this Court has assumed to revise duty orders as to one lawfully in the service".

See, too, Luftig v. McNamara, 126 U.S. App.D.C. 4, 373 F.2d 664 (1967), cert. den. sub. nom. Mora v. McNamara, 389 U.S. 934, 88 S.Ct. 282, 19 L.Ed.2d 287, where it was held that courts will not oversee "the use and disposition of military power".

In accordance with what has been said, the petition of Norman Goldstein for a writ of habeas corpus at Civil No. 732–68 will be denied, and the Complaint of Erwin B. Goldberg and Lyman G. Peyser, at Civil No. 776–68 will be dismissed for failure to state a claim.

10. 22 U.S.C.A. § 2403(i); 10 U.S.C.A. § 276(b) and 50 U.S.C.A. § 404(b).