Sgt. William **SULLIVAN, Jr.,**
NG 22792035, et al.,
Petitioners,

v.

Colonel John H. **CUSHMAN** et al.,
Respondents.

Misc. Civ. 68–63–C.

United States District Court
D. Massachusetts.

Oct. 8, 1968.

Moses M. Falk, New York City, Abner R. Sisson, Frank L. Kozol, Friedman, Atherton, Sisson & Kozol, Boston, Mass., for petitioners.

Paul F. Markham, U. S. Atty., John Wall, Asst. U. S. Atty., for respondents.

Before ALDRICH, Circuit Judge, and CAFFREY and BOWNES, District Judges.

OPINION

ALDRICH, Circuit Judge.

Petitioners, some 200 Army Reservists presently assigned to the 107 Signal Company Support, 46th Direct Support Group, United States Army, at Fort Devens, Massachusetts, bring this suit asking, *inter alia,* that their orders activating them and directing them overseas be enjoined as a violation of their constitutional rights. At their request a three-judge district court was constituted pursuant to 28 U.S.C. § 2282, and met immediately to consider a temporary restraining order in the light of the imminence of petitioners' departure. Certain respondents, representatives of the Army, appeared and countered with a motion to dismiss.

The issues raised in this aspect of the complaint have been so thoroughly reviewed in a number of recent opinions that we see no purpose in an elaborate discussion on our part. Petitioners' basic position is that the contracts by which they became attached to a Ready Reserve unit did not call for activation of this particular character except upon a declaration of war or national emergency, and that the unilateral amendment of their

contracts in 1966 by Title I of P.L. 89–687, 80 Stat. 980 (a temporary law later enacted into permanent form as 10 U.S.C. § 673a) authorizing their present orders without declaring a national emergency, was a violation of due process and a denial of equal protection. On this we permitted extensive oral argument, at which, in our view, the insubstantiality of petitioners' claim for injunctive relief conclusively appeared.

Petitioners concede, indeed insist, that their contracts include all relevant statutes in force when they were entered into;[1] however, they contend that they did not include later statutory changes.[2] In the light of the fact that statutes contemporaneously in force provided that petitioners might be activated "[i]n time of war or of national emergency declared by Congress [and] * * * [i]n·time of national emergency declared by the President * * * *or when otherwise authorized by law*," 10 U.S.C. §§ 672 and 673 (emphasis added), this position was held untenable in Winters v. United States, E.D.N.Y., 1968, 281 F.Supp. 289, aff'd per curiam 390 F.2d 879, 2 Cir., 1968, and Goldstein v. Clifford, D.N.J.,

1968, 290 F.Supp. 275. See also, the careful examination made by Judge Kaufman in Morse v. Boswell, D.Md., Aug. 6, 1968, 289 F.Supp. 812. However, it is not necessary to interpret the phrase "when otherwise authorized by law" as prospectively importing all future legislative changes. Petitioners have directed their fire to the wrong target. Neither in their lengthy complaint or memorandum do they make mention of 10 U.S.C. § 262, in effect at the time of the execution of their contracts, which defines the general purpose of the reserves.[3] In its light we have no difficulty in recognizing the significance, if not the limits, of the phrase "when otherwise authorized by law." At the least it includes, as the statutory parallelism makes clear, "at such * * * times as the national security requires."[4] It is not necessary to determine whether "when otherwise authorized by law" permits future unilateral action by Congress of every sort or description—a contention with which petitioners conceivably might well find fault. It is enough that Congress has found the present requirement of national security.[5]

1. Home Bldg. & Loan Assoc. v. Blaisdell, 1934, 290 U.S. 398, 435, 54 S.Ct. 231, 78 L.Ed. 413; Goldstein v. Clifford, D.N.J., 1968, 290 F.Supp. 275; Morse v. Boswell, D.Md., Aug. 6, 1968, 289 F.Supp. 812. Petitioners use the phrase "necessarily incorporated."

2. In view of our disposition of this claim, we do not presently reach the issue of the ability of Congress, by its authority as sovereign power or by its war powers, to abrogate the enlistment contract. But cf. Pfile v. Corcoran, D.Colo., July 17, 1968, 287 F.Supp. 554. See also 10 U.S.C. § 263, infra n. 4.

3. "§ 262. *Purpose*
The purpose of the reserve components is to provide trained units and qualified persons available for active duty in the armed forces, *in time of war or national emergency and at such other times as the national security requires*, to fill the needs of the armed forces whenever, during, and after the period needed to procure and train additional units and

qualified persons to achieve the planned mobilization, more units and persons are needed than are in the regular components. Aug. 10, 1956, c. 1041, 70A Stat. 10." (Emphasis added).

4. See also 10 U.S.C. § 263.
"§ 263. Basic policy for order into Federal service
Whenever Congress determines that more units and organizations are needed for the national security than are in the regular components of the ground and air forces, the Army National Guard of the United States and the Air National Guard of the United States, or such parts of them as are needed, together with units of other reserve components necessary for a balanced force, shall be ordered to active duty and retained as long as so needed. Aug. 10, 1956, c. 1041, 70A Stat. 11."

5. Petitioners are in no position to contend that Congress has no factual basis for finding legitimate demands exist in the name of national security. The second

We deal briefly with petitioners' claim that they were denied procedural due process in that they were not given individual hardship hearings before being notified of activation, which they contend were required by subsection (d) of Title I of P.L. 89–687 (now 10 U.S.C. § 673a(c)). This matter was given evidentiary consideration by the single judge district court in Winters v. United States, and Morse v. Boswell, supra. In the case at bar petitioners were, admittedly, notified at various dates well in advance of reporting for duty, though perhaps subsequent to receipt of the activating orders, that they might apply, and none did. Petitioners make no denial, by pleading, or by counsel in open court of this assertion made by the United States Attorney and his supporting affidavits. In addition, they affirmatively concede that they have made no applications since. We must hold them in no position to ask court relief on this score at this late date. Nor can we accept the contention that the Army had to notify a reservist prior to his receipt of activation orders, as long as there was reasonable time given before reporting for duty.

Petitioners have stated no claim for injunctive relief, temporary or permanent. We will not dismiss the complaint at this time, however, because we need not, and do not, presently reach the question whether the proposed activation of petitioners for as long as 24 months may be a violation of their rights. But see n. 2, supra.

The motion for injunctive relief will be denied.

portion of their complaint asserts that there is in fact a national emergency, and prays that this court order respondent President of the United States, and respondent members of the Congress, all of which are individually named, so to declare. In oral argument petitioners stated that the facts were so clear in this regard that we would be commanding a mere "ministerial act." We dismiss this

portion of the complaint both as beyond our jurisdiction and because petitioners, in view of our holding on the first cause of action, are without standing to make it, but we do not disregard petitioners' factual allegations. In fact we particularly asked whether there was any inconsistency between their two claims, and counsel said there was not.