414 F.2d 1060
 SP5 William S. JOHNSON, NG 23 179 853, et al., Petitioners-Appellants,
v.
Lieut.-General Beverly E. POWELL, Commanding Officer, Fort Hood, Texas, et al., Respondent-Appellees.
 No. 27211.
 United States Court of Appeals Fifth Circuit.
 July 29, 1969.
 
 Nathan R. Zahm, Sherman Oaks, Cal., Arthur Mitchell, Austin, Tex., Elsbeth Levy Bothe, Baltimore, Md., for appellants.
 William D. Ruckelshaus, Asst. Atty. Gen., Ted Butler, U. S. Atty., San Antonio, Tex., Alan S. Rosenthal, Robert E. Kopp, Attys., Civil Div., Dept. of Justice, Washington, D. C., for appellees.
 Before BELL and GOLDBERG, Circuit Judges, and ATKINS, District Judge.
 BELL, Circuit Judge:
 
 
 1
 This appeal involves a petition for writ of habeas corpus which was treated in the district court as 105 separate petitions on behalf of the 105 named petitioners.[1] Appellants, the petitioners below, sought release from active military duty. The appeal is from the denial of the petitions. We affirm.
 
 
 2
 Appellants signed dual enlistment contracts, i. e., they enlisted in the "* * * Army National Guard of Kentucky and as a Reserve of the Army with membership in the National Guard of the United States * * * under the conditions prescribed by law * * *." They certified in the enlistment contract that they understood they were "* * * expected to be available for order to active duty at any time during this enlistment in event of mobilization or emergency * * *." At the time of enlistment the law was that the reserve components of the armed forces included the Army National Guard of the United States. 10 U.S.C.A. § 261. Their National Guard unit was a part of the Ready Reserve of the Army. 10 U.S.C.A. §§ 269(b), 3077. The reserve service purpose and policy, in effect at that time and still in effect, was and is as follows:
 
 
 3
 The purpose of the reserve components is to provide trained units and qualified persons available for active duty in the armed forces, in time of war or national emergency and at such other times as the national security requires, to fill the needs of the armed forces whenever, during, and after the period needed to procure and train additional units and qualified persons to achieve the planned mobilization, more units and persons are needed than are in the regular components. 10 U.S. C.A. § 262.
 
 
 4
 Whenever Congress determines that more units and organizations are needed for the national security than are in the regular components of the ground and air forces, the Army National Guard of the United States and the Air National Guard of the United States, or such parts of them as are needed, together with units of other reserve components necessary for a balanced force, shall be ordered to active duty and retained as long as so needed. 10 U.S.C.A. § 263.
 
 
 5
 Immediately prior to being called to active duty with the army, appellants were members of the 2nd Howitzer Battalion, 138th Artillery, Kentucky National Guard. This unit was ordered to active duty in May, 1968. The activation was pursuant to § 101(e) of the Title I, Public Law 89-687, October 15, 1966, 80 Stat. 981, 10 U.S.C.A. § 263 note (1969 Cum. Supp.), which provides that "Notwithstanding any other provision of law, until June 30, 1968, the President may, when he deems it necessary, order to active duty any unit of the Ready Reserve of an armed force for a period of not to exceed twenty-four months."[2] They were assigned to the 2nd Battalion, 138th Artillery, 1st Armored Division, at Fort Hood, Texas, and since October 24, 1968 have been serving with the United States Army in Vietnam.
 
 
 6
 The issues presented involve challenges, on constitutional and statutory grounds, of the required active duty status of appellants. They contend that the army was without authority to activate their unit, and that their continued detention in the service is illegal
 
 I.
 
 7
 The activation is initially challenged as an unlawful deployment of National Guardsmen in derogation of Article I, § 8, Clause 15 of the Constitution. That clause empowers Congress "To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections, and repel Invasions * * *." The Vietnam conflict involves none of these three situations and it is clear that the activation could not rest on these militia purposes.
 
 
 8
 The difficulty with appellants' case is, however, that there is more in the Constitution. In addition to making provision for the use of the militia, the Constitution also gives Congress the power, in Article I, § 8, Clause 12, "to raise and support Armies," and this power is not limited to the conditions of service set forth in the militia clause. See Selective Draft Law Cases, 1918, 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 and Cox v. Wood, 1918, 247 U.S. 3, 38 S.Ct. 421, 62 L.Ed. 947. There would be no problem if Congress had exercised its powers under these two provisions in such a way as to maintain the separate identities of the militia and the army but the opposite is the case: Congress has provided for a blending of the militia and the army.
 
 
 9
 The beginning of this blending was aptly described by the court in Price v. United States, 1951, 100 F.Supp. 310, 121 Ct.Cl. 664, in referring to the National Defense Act of 1916:
 
 
 10
 The 1916 act was more than a recognition. It was a temporary absorption of the units that were taken. In order to avoid any possible constitutional question as to their use beyond continental borders, the act did not stop with recognition. It ripped the sack wide open, lifted the strands of the National Guard bodily and wove the component threads into the warp and woof of the Regular Army. For the period of such use they were no longer National Guard units, but an integral part of the Army of the United States. 100 F.Supp. at 317.
 
 
 11
 In 1933 Congress adopted the dual enlistment concept whereby an incoming guardsman joined both the National Guard of his home state and the National Guard of the United States, a reserve component of the U. S. Army.[3] The express purpose of the dual enlistment concept was to avoid the limitations of the militia clause and to organize the National Guard under the broader power to raise and support armies. See Weiner, Militia Clause of the Constitution, 54 Harv.L.Rev. 181, 199, 203-210. This is the current statutory pattern and petitioners do not deny that upon enlistment in the National Guard of Kentucky they also enlisted in the Army National Guard of the United States.
 
 
 12
 The power "to raise and support armies" is one of the most important powers of Congress, and the statutes which make the National Guard a reserve component and state the purpose for so doing seem to bring the dual enlistment system clearly within the "necessary and proper" clause. Article I, § 8, Clause 18; 10 U.S.C.A. §§ 262, 263; 32 U.S.C.A. § 102. "The constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping." United States v. O'Brien, 1968, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672. Moreover, we find nothing in the Constitution which prohibits the National Guard from functioning in such a dual role.
 
 
 13
 We conclude that the dual enlistment system was a proper exercise of power necessary and proper to the raising and supporting of armies. It follows that there was no constitutional inhibition against placing appellants on active duty. This view comports with the decision of the court in Drifka v. Brainard, W.D.Wash., 1968, 294 F.Supp. 425, on the same question.
 
 II.
 
 14
 Appellants next contend that their call-up order was illegal. One argument is that their activation for a period of twenty-four months was not authorized by Public Law 89-687. This contention is based on the fact that Public Law 89-687, § 101, provides for the activation of entire units, under subsection (e), for periods of twenty-four months with no credit for prior individual active duty service and at the same time provides for activation of individual members, under subsection (c), footnote 2, supra, with credit for prior individual active duty service. Since the activation order here was directed to the "above units and members thereof,"[4] they urge that they are entitled to the benefit of subsection (c), and must be credited with their prior active duty training time against the twenty-four month call-up period. Since they were activated for a period of twenty-four months without credit for prior active duty time, it follows, they say, that the order was unauthorized and is invalid.
 
 
 15
 After careful examination of the statute, we conclude that Public Law 89-687, § 101(e) clearly authorizes twenty-four month unit call-ups. Subsection (e) provides for such "notwithstanding any other provision of law." The phrase "any other provision of law" would seemingly include subsection (c) which allows credit on individual call-ups. Any other construction would considerably weaken subsection (e) because it would allow units to be activated for twenty-four months while the individual members of such units would have to be released after their total active duty, counting previous active duty, equaled twenty-four months. We cannot attribute such an inconsistency to Congress.
 
 
 16
 Appellants also contend that the activation of their National Guard unit was unlawful because Public Law 89-687 as applied to them constitutes a denial of "equal protection" in that it discriminates without any rational basis between guardsmen called up as a unit and those called up as individuals. This precise Fifth Amendment equal protection argument was made and rejected in Morse v. Boswell, D.Md., 1968, 289 F.Supp 812, 819, aff'd per curiam, 401 F.2d 544 (4 Cir.), cert. den., 393 U.S. 1052, 89 S.Ct. 687, 21 L.Ed.2d 694. The court there found a rational basis for the differing treatment. "Clearly, Congress could sensibly decide that trained units are more valuable and more needed than individual reservists." Judge Kaufman's reasoning applies equally well to this case.
 
 III.
 
 17
 The next argument advanced by appellants is that their activation is in violation of their enlistment agreements. They say that under the agreements they could not be ordered to active duty without their consent except in time of war or national emergency declared by Congress or national emergency declared by the President. Since the activation was ordered pursuant to Public Law 89-687, § 101(e), which requires no determination of national emergency, petitioners argue that these orders breached their contract rights. Appellants concede, as they must, that the applicable statutes in effect when they signed their agreements must be deemed incorporated therein by reference. See e. g., Home Building & Loan Association v. Blaisdell, 1934, 290 U.S. 398, 435, 54 S.Ct. 231, 78 L.Ed. 413.
 
 
 18
 Public Law 89-687 was not passed until after petitioners enlisted into the National Guard but 10 U.S.C.A. § 673(a), which was in effect when they enlisted, provides that activation may be ordered "In time of national emergency declared by the President after January 1, 1953, or when otherwise authorized by law." The government contends that "when otherwise authorized by law" would include later enacted Public Law 89-687, § 101(e), and not just those laws in effect on the date that 10 U.S.C.A. § 673(a) was enacted. The petitioners, however, contend that "when otherwise authorized by law" cannot be given any such prospective interpretation and that it is limited to those laws in effect at the time when it was enacted. Several courts have recently considered this question and held that "when otherwise authorized by law" should be given a prospective meaning. See Morse v. Boswell, supra; Winters v. United States, E.D. N.Y., 1968, 281 F.Supp. 289, aff'd per curiam, 390 F.2d 879 (2 Cir.); Adams v. Clifford, D. Hawaii, 1969, 294 F.Supp. 1318; Sullivan v. Cushman, D.Mass., 1968, 290 F.Supp. 659; Linsalata v. Clifford, S.D.N.Y., 1968, 290 F.Supp. 338; Goldstein v. Clifford, D.N.J., 1968, 290 F.Supp. 275. We agree with the interpretation that 10 U.S.C.A. § 673(a), should be read so as to include the prospective enactment here. We therefore hold that petitioners' enlistment contracts have not been violated by activation pursuant to Public Law 89-687.
 
 
 19
 Indeed, it seems to us that the very terms of the enlistment agreements — enlistment "under the conditions prescribed by law" and availability "for order to active duty * * * in the event of mobilization or emergency" — militate against any such argument by appellants.
 
 IV.
 
 20
 Petitioners' final contention that Public Law 89-687, § 101(e), is an unconstitutional delegation of authority to the President is rejected. See Morse v. Boswell, supra, 289 F.Supp. 819-820.
 
 
 21
 We find no error. The judgment is thus affirmed.
 
 
 
 Notes:
 
 
 [1]
 Petitioners also sought injunctive relief to avoid their transfer to military duty in Vietnam. Injunctive relief was denied by the district court, this court, and by Mr. Justice Black of the Supreme Court. Appellants then petitioned Mr. Justice Douglas of the Supreme Court and he referred the application to the full Supreme Court which also denied the injunction. Mr. Justice Douglas filed a separate memorandum opinion. Johnson v. Powell, 1968, 393 U.S. 920, 89 S.Ct. 250, 21 L.Ed.2d 255
 
 
 [2]
 Public Law 89-687, Title I, § 101, Oct. 15, 1966, 80 Stat. 981, provides:
 (a) Notwithstanding any other provision of law, until June 30, 1968, the President may order to active duty any member of the Ready Reserve of an armed force who —
 (1) is not assigned to, or participating satisfactorily in, a unit in the Selected Reserve, and
 (2) has not fulfilled his statutory reserve obligation, and
 (3) has not served on active duty or active duty for training for a total of twenty-four months.
 (b) Notwithstanding the provisions of any other law, until June 30, 1968, the President may order to active duty any member of the Ready Reserve of an armed force who had become a member of a reserve component prior to July 1, 1966; and who
 (1) has not served on active duty or active duty for training for a period of one hundred and twenty days or more, and
 (2) has not fulfilled his statutory reserve military obligation.
 (c) A member ordered to active duty under this section may be required to serve on active duty until his total service on active duty or active duty for training equals twenty-four months. If the enlistment or period of military service of a member of the Ready Reserve ordered to active duty under subsections (a) or (b) of this section would expire before he has served the required period of active duty prescribed herein, his enlistment or period of military service may be extended until that service on active duty has been completed.
 (d) In order to achieve fair treatment as between members in the Ready Reserve who are being considered for active duty under this section, appropriate consideration shall be given to —
 (1) family responsibilities; and
 (2) employment necessary to maintain the national health, safety, or interest.
 (e) Notwithstanding any other provision of law, until June 30, 1968, the President may, when he deems it necessary, order to active duty any unit of the Ready Reserve of an armed force for a period of not to exceed twenty-four months.
 
 
 [3]
 48 Stat. 153 (1933)
 
 
 [4]
 Department of Army, Joint Message-Form DA 859314, April 11, 1968