Gerald M. MICKEY

v.

Lt. Col. Lee B. BARCLAY and Commandant Marine Corps.

Civ. A. No. 70–3405.

United States District Court,
E. D. Pennsylvania.

July 9, 1971.

Henry A. Stein, Philadelphia, Pa., for plaintiff.

Richard R. Galli, Asst. U. S. Atty., for defendants.

## OPINION

LUONGO, District Judge.

Gerald M. Mickey, a member of the Marine Corps Reserve, instituted this suit against his commanding officer, Lt. Colonel Lee B. Barkley (incorrectly named Barclay in the caption), and the Commandant of the Marine Corps seeking to void an order issued pursuant to 10 U.S.C. § 673a [1] ordering him to report for involuntary active duty for 16 months.

The facts as gathered from the evidence at the hearing before me on June 11, 1971 and from records of the Marine Corps filed as part of the record of this case, are the following:

In 1965 Mickey joined the Marine Corps Reserve, signing a six year commitment effective until July 11, 1971. His record in the Reserve was good until the weekends of April 18–19, and May 2–3, 1970, when he failed to attend scheduled drills. He sought to have the absences excused for illness, and presented a doctor's note indicating that he had an "unstable back" and that he was unable to perform his "usual duties." Under applicable regulations an absence would be excused for illness only if the reservist submitted a doctor's statement which clearly certified that the reservist was either hospitalized or not ambulatory during the drill period, or that attendance at drill would be injurious to his health or welfare.[2] After the first such absence, the commanding officer, by letter dated May 1, 1970, notified Mickey that the doctor's note did not meet the certification requirements for an excused absence; that he was being charged with an unexcused absence; that he could return to satisfactory performance status in the program by reporting for extra instruction or duty (EIOD) on May 18 and 19 (which were week days); and that failure to perform EIOD would subject him to listing as an unsatisfactory participant, in which case involuntary active duty orders would be sought. Following the absence from the drill of May 2–3, by letter dated May 14, 1970, Mickey was notified that he was being awarded another unexcused absence and was directed to report for EIOD on May 25 and 26. On or about May 23, Mickey requested and was granted an extension of time for the performance of the EIOD. He also requested the opportunity to perform that duty on a weekend (rather than on week days) so as not to jeopardize his job. After making the latter request he was instructed to telephone Chief Warrant Officer Krell on the following day to advise him of specific

---

1. 10 U.S.C. § 673a provides, in pertinent part:

"§ 673a. Ready Reserve: members not assigned to, or participating satisfactorily in, units

(a) Notwithstanding any other provision of law, the President may order to active duty any member of the Ready Reserve of an armed force who—

(1) is not assigned to, or participating satisfactorily in, a unit of the Ready Reserve;

(2) has not fulfilled his statutory reserve obligation; and

(3) has not served on active duty for a total of 24 months.

(b) A member who is ordered to active duty under this section may be required to serve on active duty until his total service on active duty equals 24 months. If his enlistment or other period of military service would expire before he has served the required period under this section, it may be extended until he has served the required period."

2. Sub Unit #1 Order 1571 R. 2C, which provided in part:

"5. Action. * * *

c. In view of recent abuse of the use of a doctors statement, only those* doctor statements which *clearly certify* that the reservist is/was/shall be hospitalized during the full time of the drill period, is not ambulatory, or that attendance at a drill would be injurous* to his/her health as* welfare, shall be considered for an excused absence. All other personnel claiming illness or injury shall report to the Training Center to be examined by qualified military medical personnel or in unusual cases, request that qualified, military medical personnel varify* their condition at those* location of claimed incaporitation.* "

(* All spelling, etc., as in original.)

dates on which he could perform the EIOD. Krell was to submit those dates to Col. Barkley for approval. Mickey failed to make the call.[3]

By letter dated June 5, 1970, Col. Barkley notified Mickey that he was an unsatisfactory participant and that he was being recommended for involuntary active duty. The letter advised Mickey that he was entitled to submit a statement in his own behalf for consideration along the chain of command. In a personal meeting thereafter, Col. Barkley encouraged Mickey to submit such a statement. In response, Mickey submitted a report from an orthopedic specialist as to the condition of his back and notified Col. Barkley's office that that was his statement.

On June 25, 1970, Col. Barkley forwarded to the appropriate Marine authorities his recommendation that Mickey be involuntarily activated. Accompanying the recommendation was a comprehensive statement of the facts concerning the missed drills and the failure to perform EIOD; a report from a Navy medical examination dated March 1970 indicating that Mickey had a bad back; a report from a Navy medical examination in June 1970 indicating that he was fit for duty; and the aforementioned report from Mickey's orthopedic specialist. On November 6, 1970, activation orders were issued. On November 18, 1970, Mickey was ordered to report to Camp Pendleton by December 14, 1970. The instant suit was filed December 12, 1970. A temporary restraining order was entered preventing the defendants from moving Mickey from this district. By agreement of the parties, the restraining order has remained in effect until the present.

Mickey has advanced several grounds as bases for relief. He charges that (1) recording his absences as unexcused was arbitrary and capricious; (2) he was denied due process of law because he was denied proper administrative remedies; and (3) 10 U.S.C. § 673a is unconstitutional. He seeks a preliminary injunction to enjoin the defendants from enforcing the activation orders and an order in the nature of mandamus to compel defendants to permit him to complete military appeal procedures. He also seeks to convene a three-judge court under 28 U.S.C. § 2282 to pass upon the constitutionality of § 673a.

*Mandamus and Injunctive Relief.*

■ A discretionary judgment of a military officer within the scope of his authority is not reviewable by a federal court. Byrne v. Resor, 412 F.2d 774 (3d Cir. 1969); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969). Denying an excused absence from drills, the order complained of here, is such a discretionary judgment and is not reviewable. Byrne v. Resor, *supra;* O'Mara v. Zebrowski, 315 F.Supp. 1195 (E.D.Pa.1970). Beyond that, since the record in the instant case clearly reveals that the reservist failed to comply with applicable regulations for obtaining an excused absence for illness (Sub-Unit No. 1, Order 1571 R. 2C), his commanding officer's decision not to grant an excused absence could not be said to be arbitrary or capricious. Byrne v. Resor, *supra.*

■ In addition to the foregoing grounds for denial of relief, plaintiff failed to exhaust adequate and available administrative remedies, and he is therefore foreclosed from raising in this court any issue relating to the merits of his commanding officer's decisions (a) to

---

3. Mickey testified that he did call headquarters on that day, and that he spoke to a sergeant who told him not to bother to telephone Krell since the officers had already decided that he must perform his EIOD on week days. I do not accept that testimony as credible. I am convinced that if this alleged conversation had taken place, Mickey would have mentioned it in his later meeting with Col. Barkley. At no time until the hearing did he mention that any such conversation had taken place. The failure to make the telephone call is consistent with what can only be characterized as Mickey's inexcusably complacent conduct during the period in question.

record his absences as unexcused, (b) to deny him further opportunity to perform EIOD and (c) to recommend him for involuntary active duty. See Karpinski v. Resor, 419 F.2d 531 (3d Cir. 1969). There were available to plaintiff procedures by which he could have contested each of the commanding officer's decisions. The most common method is referred to in the Marine Corps as "Request Mast." Under this procedure, a marine may request a hearing on any disagreement or grievance with a superior officer before his commanding officer, or before any other superior officer, or with an inspecting general. In making a request for such a hearing, the marine is not required to disclose the purpose of the request except to the authority to whom it is directed. If the marine fails to obtain the relief he seeks in the first instance, he may appeal upon the chain of command to the Commandant of the Marine Corps.[4]

I am satisfied from the evidence adduced at the hearing that Mickey fully understood the nature and purpose of "Request Mast" and that he was fully aware that it was available to him to question each of his commanding officer's decisions.

Another review procedure available to Mickey, insofar as the activation order was concerned, was to submit a statement setting forth his version of the facts relating to his absence from drills and the difficulties relating to his attempts to perform EIOD to remain in satisfactory status. Mickey was not only informed by Col. Barkley's letter of June 5 that he could submit such a statement, he was encouraged to do so.

At no time did Mickey request mast with a superior officer or the inspecting general.[5] He did take advantage of the opportunity to submit a statement to counter Col. Barkley's recommendation that activation orders be issued, but only to the extent of submitting a medical report. At no time did Mickey ever attempt to raise any issue relating to the events in question other than to assert the adequacy of the medical reasons for his absences from drills. Mickey attempted to explain away his failures to use available administrative remedies by stating that Chief Warrant Officer Krell told him that he had no right to appeal when he talked to him in June 1970 after a drill, but I do not accept that explanation in light of Mickey's admitted knowledge of proper review procedures. His attitude during the period in question was one of apathy and complacency. As an example, he testified that the reason he did not request mast with an inspecting general was because he would have been required to appear in person at headquarters early in the morning to fill out the application and he might thereby have lost some time from work. Considering the seriousness of the consequences of his failure to have the absences excused or to be restored to satisfactory status by performing EIOD (consequences of which he was well aware), Mickey's explanation for his failure to apply for hearing is beyond belief. I find that he deliberately bypassed adequate and available administrative remedies and he is, therefore, foreclosed from raising any issue as to whether the absences should have been excused, or whether he was given adequate opportunity to perform EIOD to return to satisfactory status, or as to the propriety of Col. Barkley's recommendation that involuntary activation orders be issued, or as to the validity of the November 6, 1970 activation order.

---

4. Plaintiff argues that 10 U.S.C. § 938 provides another method of review, and that under Smith v. Resor, 406 F.2d 141 (2d Cir. 1969), he is entitled to institute grievance procedures against the activation order of June 5, 1970. Smith v. Resor is inapposite. (See p. 1113, infra). Moreover, 10 U.S.C. § 938 deals with court martial, which is a judicial process.

See also Naval Regulations No. 1242, 1243. We are here dealing with an administrative process. Fox v. Brown, 402 F.2d 837 (2d Cir. 1968). (See pp. 1113–1114, infra).

5. An inspecting general visited Mickey's unit twice between April and November 1970.

Mickey's counsel has argued that Smith v. Resor, *supra,* dictates that a reservist ordered to active duty is entitled to appeal such decision under the procedures outlined in 10 U.S.C. § 938.[6] In my view that case is clearly distinguishable on its facts. There, a reservist was ordered to have his long hair cut short. Pertinent regulations permitted long hair if required in civilian employment. The reservist submitted a letter from his business agent that long hair was required in his employment. The commanding officer nevertheless ordered him to cut it and told him he had no rights of review concerning the order. In addition, the commanding officer deliberately withheld the letter from the reservist's file. In ordering that administrative review procedures be made available, the court pointed out that the Army had failed to follow its own procedures and safeguards, and that the commanding officer had effectively foreclosed review of his order by advising the reservist that he had no right to review and by withholding important evidence from his file, contrary to regulations. The facts in the instant case are clearly different. Mickey was aware of the several procedures for reviewing disputes with his commanding officer, and the commanding officer, Col. Barkley, rather than attempting to foreclose review, encouraged Mickey to avail himself of at least one avenue of review, i. e., submission of a statement to accompany Barkley's recommendation for issuance of activation orders. There is no evidence here, as there was in *Smith,* of a withholding of available administrative remedies.

*Constitutionality of § 673a.*

Plaintiff argues that 10 U.S.C. § 673a is unconstitutional on its face in that (a) it is void for vagueness since it lacks standards by which "unsatisfactory participation" can be ascertained; and (b) it authorizes administrative punishment without procedural due process. Plaintiff also alleges that § 673a as applied to him is unconstitutional in that (a) he is being subjected to cruel and unusual punishment and (b) he has been deprived of procedural due process because he was denied an opportunity to respond to Col. Barkley's recommendation and the endorsements of Col. Barkley's superiors. Plaintiff requests the convening of a three-judge court under 28 U.S.C. § 2282 to determine the constitutionality of § 673a on its face.

■■ As for the charge that "unsatisfactory participation" is too vague a standard, whatever else may be encompassed by the term, it is clear that unexcused absences from drills must certainly come within any acceptable meaning. Consequently, the standard was not too vague insofar as it applied to Mickey,[7] especially in view of the specific advices he was given concerning what would constitute unsatisfactory participation. This argument is without merit. See Anderson v. Laird, 437 F.2d 912 (7th Cir. 1971). See generally United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

Plaintiff's second argument is premised on the proposition that rights of procedural due process, "including the right to counsel, cross-examination of witness, an impartial tribunal, public

6. 10 U.S.C. § 938 provides:
 "§ 938. Art. 138. Complaints of wrongs
 Any member of the armed forces who believes himself wronged by his commanding officer, and who, upon due application to that commanding officer, is refused redress, may complain to any superior commissioned officer, who shall forward the complaint to the officer exercising general court-martial jurisdiction over the officer against whom it is made. The officer exercising general court-martial jurisdiction shall examine into the complaint and take proper measures for redressing the wrong complained of; and he shall, as soon as possible, send to the Secretary concerned a true statement of that complaint, with the proceedings had thereon."

7. 10 U.S.C. § 270. See Exhibit D-4, "Mandatory Participation Requirements."

**1114**

hearing or trial, and others * * *" (Plaintiff's Brief, p. 10) must be accorded an individual whenever the government attempts to punish. Plaintiff avers that activation orders issued pursuant to § 673a is punitive administrative action, and hence, § 673a is unconstitutional because it does not accord a reservist procedural due process.

■ Plaintiff's propositions are correct insofar as they relate to criminal conduct and criminal penalties. See Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Activation of a reservist pursuant to the provisions of § 673a, however, is not a criminal punishment. At most it is an administrative sanction imposed upon a reservist for a breach of his enlistment contract.

■ A reservist enters the reserve program voluntarily and he does so knowing that he will be subjected to certain military regulations for a period of six years, but in return he avoids the obviously greater and more irksome regimentation of the regular army for two years. Raderman v. Kaine, 411 F.2d 1102 (2d Cir.), petition for cert. dismissed, 396 U.S. 976, 90 S.Ct. 467, 24 L.Ed.2d 447 (1969). One of the agreements he makes upon enlistment is that he may be activated, inter alia, "when * * * authorized by law." 10 U.S.C. § 673; 10 U.S.C. § 672. Johnson v. Powell, 414 F.2d 1060 (5th Cir. 1969); Sullivan v. Cushman, 290 F.Supp. 659 (D.Mass. 1968), motion for stay denied, 393 U.S. 810, 89 S.Ct. 43, 21 L.Ed.2d 87 (1969). Congress has provided in § 673a that one circumstance which subjects a reservist to activation is "unsatisfactory participation" in the reserve program, and Congress has delegated to the executive branch of government the power to determine what constitutes "unsatisfactory participation." That Congress has the constitutional power to enact such a law [Johnson v. Powell, *supra;* Schwartz v. Franklin, 412 F.2d 736 (9th Cir. 1969); Karpinski v. Resor, *supra.*] and to delegate its power to the executive branch of government [Fox v. Brown, 402 F.2d

837 (2d Cir. 1968), cert. denied, 394 U.S. 938, 89 S.Ct. 1219, 22 L.Ed.2d 471 (1969)], is not open to question. In return for the reservist's agreements, Congress has specifically provided that one who satisfactorily participates in a reserve program is exempt from induction into the regular army. 50 U.S.C.App. § 456. Raderman v. Kaine, *supra.* Neither the purpose nor the effect of activation under § 673a, therefore, is criminal in scope. It is simply an administrative or contractual sanction imposed for failure to perform duties voluntarily accepted in return for exemption from service in the regular army.

Neither Kennedy v. Mendoza-Martinez, *supra,* nor Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), cited by plaintiff in support of his position, are apposite. In *Mendoza-Martinez* the Court declared § 401 (j) of the Nationality Act of 1940 (58 Stat. 746) and its successor and counterpart § 349(a) (10) of the Immigration and Nationality Act of 1952 (66 Stat. 163, 267–68) unconstitutional. The Court stated that both enactments, which provided for forfeiture of citizenship for naturalized citizens convicted of draft evasion by leaving the country, imposed criminal punishment without according an accused his rights under the Fifth and Sixth Amendments, "including indictment, notice, confrontation, jury trial, assistance of counsel, and compulsory process for obtaining witnesses." *Id.* at p. 167, 83 S.Ct. at p. 567. The basis of the holding was the Court's finding that the penalty sought to be imposed, i. e., forfeiture of citizenship, was clearly criminal in nature and not an administrative sanction as the government had argued.

In *Gutknecht,* the Court invalidated the so-called "delinquency" regulations of the Selective Service System. Under these regulations a registrant was subject to accelerated classification and induction for allegedly "minor" infractions of the Selective Service Act. The Court held that the Selective Service Act

did not authorize the promulgation of such punitive regulations, and that, in fact, the regulations were in derogation of the statutory scheme by which violators of the Act were to be criminally prosecuted. In the instant case, it is Congress, not the military, which has expressly provided an administrative method for activating a reservist in accordance with the agreements undertaken in his enlistment contract.

■ . Plaintiff's attack upon the constitutionality of § 673a on its face is plainly insubstantial and does not warrant the convening of a three-judge court under 28 U.S.C. § 2282. See Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Schneider v. Rusk, 372 U.S. 224, 83 S.Ct. 621, 9 L.Ed.2d 695 (1963); California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1937). I conclude that § 673a is constitutional on its face.

■ Plaintiff's remaining arguments that § 673a, as applied to him, is unconstitutional are also without merit. His assertion that he was denied procedural due process because he was not given an opportunity to respond to Col. Barkley's recommendation has been discussed earlier. It is clear that Mickey had ample opportunity to answer the recommendation of Col. Barkley, and was even encouraged to do so, but chose to remain mute. He cannot now complain that he was denied due process.

■ Plaintiff argues that activation for 16 months constitutes cruel and unusual punishment because it is disproportionate to the offenses with which he is charged, i. e., unexcused absences. Plaintiff notes that if he had been court-martialled for the same offenses, the maximum penalty would be six months in prison and a small fine.

Once again plaintiff has assumed that activation is a criminal penalty. As has already been pointed out, § 673a imposes an administrative sanction for failing to perform obligations freely accepted. It imposes upon Mickey no more than that which is required of other young men, i. e., two years of duty in the regular army.

Plaintiff has not been deprived of any of his constitutional rights. The motion for preliminary injunction and for mandamus will be denied. The motion for the convening of a three-judge court under 28 U.S.C. § 2282 will also be denied.

The foregoing constitutes the court's Findings of Fact and Conclusions of Law as required by Rule 52(a), F.R.Civ.P.