**Aloysius A. J. FLUTE**

v.

**The UNITED STATES.**

**No. 38–75.**

United States Court of Claims.

May 12, 1976.

·Richard P. Fox, Los Angeles, Cal., attorney of record for plaintiff; Max Gest, Los Angeles, Cal., of counsel.

Arlene Fine, with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D.C., for defendant; Peter A. T. Sartin, and Stephen G. Anderson, Washington, D.C., of counsel.

Before DAVIS, NICHOLS and BENNETT, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge:

Plaintiff, Staff Sergeant Aloysius A. J. Flute, was tried for assaulting a Korean civilian on July 8, 1972, before a Special Court-Martial convened at Kunsen Air Base, Korea on August 31 and September 1, 1972. Flute was convicted and sentenced to a reduction in rank or grade, and was restricted to the limits of Kunsen Air Base for two months. The conviction and sentence were approved by the Commander of the 3rd Combat Support Group, the convening authority. Plaintiff applied three times to the Office of the Judge Advocate General (JAG) in accordance with Article 69 of the Uniform Code of Military Justice, 10 U.S.C. Sec. 869 (1970). Relief was denied on all three occasions.

Flute then filed an application on June 20, 1974, for correction of his military records with the Air Force Board for Correction of Military Records (BCMR) pursuant to 10 U.S.C. Sec. 1552. By letter dated October 10, 1974, plaintiff was advised that his application had been denied without a hearing because he "failed to establish a showing of probable error or injustice." Plaintiff thereafter filed suit in this court under 28 U.S.C. Sec. 1491, seeking back pay because of his reduced rank, and a correction of his military records by voiding his court-martial conviction.

Plaintiff's motion for summary judgment is based on three points: first, that the court-martial conviction should be overturned because the trial and review thereof were constitutionally unsound; second, that the BCMR acted arbitrarily and capriciously in violation of its own regulations and the due process clause of the Fifth Amendment to the Constitution; and third, that plaintiff was denied equal protection of the laws under 10 U.S.C. Sec. 277. Defendant has cross-moved. We do not find any merit in plaintiff's contentions.

■ Plaintiff's first argument is that the court-martial proceeding was constitution-ally unfair. The Supreme Court has held that this court has jurisdiction to review court-martial convictions, *if at all*, only where the alleged infirmities at the court-martial rise to a constitutional level. *United States v. Augenblick*, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969). This is so because of the finality language of the Uniform Code of Military Justice, 10 U.S.C. Sec. 876 which states:

> The appellate review of records of trial provided by this chapter, the proceedings, findings, and sentences of courts-martial as approved, reviewed, or affirmed as required by this chapter, and all dismissals and discharges carried into execution under sentences by courts-martial following approval, review, or affirmation as required by this chapter, are final and conclusive.

This court does not have the authority to retry the facts of a court-martial proceeding nor to act as a reviewing court of the decision of the court-martial tribunal. *Artis v. United States*, 506 F.2d 1387, 205 Ct.Cl. 732 (1974).

■ Plaintiff contends that the judge failed to give the jury an instruction on self-defense and that there were irregularities in the review of the proceeding. The question is whether these alleged defects "rise to a constitutional level" as contemplated by the Supreme Court in *Augenblick, supra*. A plaintiff in this court must make some showing, not merely an allegation, that he has been subject to constitutional unfairness. *Gross v. United States*, 531 F.2d 482, 209 Ct.Cl. —— (1976). The Supreme Court phrased the issue as follows:

> * * * apart from trials conducted in violation of express constitutional mandates, a constitutionally unfair trial takes place only where the barriers and safeguards are so relaxed or forgotten * * * that the *proceeding is more a spectacle * * * or trial by ordeal * * * than a disciplined contest.* At 393 U.S. 356, 89 S.Ct. at 534. (Emphasis supplied.)

Defendant's counsel neither requested a self-defense instruction nor objected to the lack of an instruction. The Federal Rules

of Criminal Procedure, Rule 30, would bar a party from excepting to an instruction unless he objects before the jury retires. In light of this rule, it would seem that a merely erroneous instruction does not deprive the accused of a constitutionally fair trial. Mere error in admitting or excluding evidence does not make a court-martial constitutionally unfair. Military tribunals must be accorded reasonable scope for the exercise of judgment. Plaintiff also alleged that there were constitutional defects in the post-trial review procedure, specifically that the Government lost or misplaced 2 pages of the court-martial Record of Trial, thus precluding an intelligent review of the trial. In its petition, plaintiff complained that the "post-trial review did not contain a summary of evidence, an opinion as to the adequacy of the evidence, the effect of any error or irregularity at trial, a specific recommendation as to the actions to be taken and specific reasons for opinions and recommendations."

A Record of Trial was prepared in plaintiff's case which was sent to the convening authority who approved the decision, as required by Article 60, 10 U.S.C. Sec. 860. Thereafter the Record was sent to the Staff Judge Advocate General, who reviewed the case in accordance with Article 65(c), 10 U.S.C. Sec. 865(c) (1970). Neither provision requires a written memorandum. The review was in accord with the regulations pertaining to *special* court-martials. Plaintiff has cited cases in his brief concerned with review procedures for general court-martials. Plaintiff was convicted by a special court-martial and therefore it is apparent that the proper regulations were followed. There is no showing that plaintiff was prejudiced by the loss of the two pages or that the review procedure was inherently unfair. The court-martial was not a "spectacle" nor a "trial by ordeal". Plaintiff's allegations do not rise to a constitutional level. Therefore, we do not have jurisdiction to review the court-martial proceeding. Moreover, since this is a non-constitutional issue and was raised at the military forums available to plaintiff, it should not be raised here again. The finality language of the statute means, with whatever else, that the military tribunal must be allowed a reasonable scope for the exercise of judgment in deciding just how much is necessary to be done to effectuate a constitutional right they are aware of and manifestly respect. *Gallagher v. United States,* 423 F.2d 1371, 191 Ct.Cl. 546, *cert. denied,* 400 U.S. 849, 91 S.Ct. 58, 27 L.Ed.2d 86 (1970).

Plaintiff's second argument is that he was deprived of due process of law by the BCMR's review of the court-martial proceeding. Plaintiff avers that the BCMR acted in an arbitrary and capricious manner when it considered a JAG advisory opinion on whether to grant plaintiff a hearing, without permitting plaintiff to comment, and that the Board violated its own regulation by failing to prepare a written record of its decision.

Due process of law is variable in concept. The procedures required by the due process clause depend upon the particular circumstances involved, the precise nature of the Government function and the type of "liberty" or "property" interest affected. *Arnett v. Kennedy,* 416 U.S. 134, 155, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Cafeteria & Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

A starting point in examining the requisites of due process in a BCMR proceeding is the statute, 10 U.S.C. Sec. 1552, which provides:

(a) The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he considers it necessary to correct an error or remove an injustice * * * Except when procured by fraud, a correction under this section is final and conclusive on all officers of the United States.

The denial of a hearing before the BCMR does not *per se* deprive plaintiff of due process. Plaintiff contends that he should have been able to review all the evidence before the BCMR. While it might or might not have been better practice to allow plaintiff to read the JAG advisory opinion, we do not think the Board's failure to do so amounted to a constitutional or statutory violation. In *Merson v. United States,* 173 Ct.Cl. 92 (1965), *on rehearing,* 401 F.2d 184, 185 Ct.Cl. 48 (1968), we held, citing many cases, that a Correction Board rejecting a claim on medical grounds without a hearing, might obtain an opinion from the Surgeon General without advising the claimant.

█ In deciding without a hearing, the Board is in effect conducing an *ex parte* inquiry. If the JAG is asked for an opinion this does not make him an adversary counsel to the claimant as plaintiff here supposes. The BCMR's review of a case is not an adversary proceeding. *Armstrong v. United States,* 205 Ct.Cl. 754 (1974). A hearing is not required by statute, but is within the BCMR's discretion. *Armstrong, supra; Newman v. United States,* 185 Ct.Cl. 269 (1968); *Hutter v. United States,* 345 F.2d 828, 170 Ct.Cl. 517 (1965). If a hearing is granted, the Secretary has the discretion to determine the scope of review. *See, Biddle v. United States,* 186 Ct.Cl. 87 (1968). 32 C.F.R. Sec. 865.7 authorizes the Board to hold a hearing, order correction of records without a hearing or deny a hearing. The fact that that BCMR requested a legal opinion does not make its ultimate decision to deny a hearing any less valid. The Board could have denied plaintiff a hearing without seeking any legal advice. In *Weiss v. United States,* 408 F.2d 416, 187 Ct.Cl. 1 (1969), we held that if the JAG desires to contribute to a decision on record correction he should submit his views to the Board. Plaintiff has not shown that the denial of a hearing was arbitrary or capricious or that it was based on any erroneous facts, as in *Hutter, supra.* Therefore we conclude that the BCMR's use of an advisory opinion, given the broad scope of the Secretary's discretion in determining entitlement to a

hearing, does not violate the due process clause.

█ Further, plaintiff alleges that the BCMR violated its own regulations, 32 C.F.R. Sec. 865.12(c) and Sec. 865.13 by failing to keep a record of the proceedings. The BCMR recorded its determination to deny plaintiff's application without a hearing, the date of the decision, and by whom it was made, but did not prepare a written report of the findings or any summary. Plaintiff urges the court to apply 32 C.F.R. Sec. 865.12(c) and Sec. 865.13 to the case. Such an interpretation is inconsistent with the organizational division of the regulation. We agree with defendant's reading of the regulation: that 32 C.F.R. Sec. 865.12 and Sec. 865.13 apply only to Board *hearings* and not to the initial decision as to whether to permit a hearing.

Title 32 of the Code of Federal Regulations, Part 865, Subpart A established procedures for the consideration, by the Secretary of the Air Force acting through a Correction Board, of applications for the correction of military records. 32 C.F.R. Sec. 865.7 "Review of applications," provides three possible dispositions of applications for corrective actions: (1) correction of records without a hearing; (2) denial of the application without a hearing; and (3) authorization of a hearing. The regulations do not discuss the first alternative. The second alternative is considered in Sec. 865.-7(b), which details the criteria for denying relief and Sec. 865.7(c) which provides that written findings are not required when an application is denied without a hearing. Nothing further is said about denial of an application without a hearing. 32 C.F.R. Sec. 865.7(c) clearly applies to the Board's determination not to grant plaintiff a hearing.

After explaining what is necessary for denial of an application, the regulation in subsequent sections details entitlement to a hearing, Sec. 865.8; conduct of a hearing, Sec. 865.10; action by the Board, Sec. 865.-12; and action by the Secretary, Sec. 865.13. 32 C.F.R. Sec. 865.12(c) is part of the regu-

lation covering action by the Board *after a hearing has been held.* If a hearing is not held in accordance with 32 C.F.R. Sec. 865.-10, then 32 C.F.R. Sec. 865.12(c) does not apply. Since a hearing was not held in plaintiff's case, it cannot be said that the Board violated its own regulations.

Plaintiff's final argument is that the Board denied him equal protection of the laws when it refused to allow him to comment on or rebut the JAG advisory opinion since the Navy, operating a Correction Board under 10 U.S.C. Sec. 1552 recognizes an applicant's right to an advisory opinion. Plaintiff further argues that the Board violated 10 U.S.C. Sec. 277, which provides that "laws applying to both Regulars and Reserves shall be administered without discrimination—(1) among Regulars; (2) among Reserves; and (3) between Regulars and Reserves."

10 U.S.C. Sec. 1552(a) provides that the various correction boards will function under procedures established by their respective Secretaries. There is no requirement that the regulations be identical for each of the services. This court has recognized that the various Secretaries have discretion to determine the scope of the Board's review. *See, Biddle, supra.* We will not disturb the regulation procedure absent a showing of arbitrary or capricious action. *See, Winters v. United States,* 412 F.2d 140 (9th Cir.), *cert. denied,* 396 U.S. 920, 90 S.Ct. 248, 24 L.Ed.2d 200 (1969). (10 U.S.C. Sec. 277 did not forbid the Marine Corps from requiring 100 percent attendance at its reservists drills although reservists in other branches of the armed forces were required to attend only 90 percent of the reserve drills). Plaintiff has not shown that he has suffered any equal protection injury. Therefore, plaintiff's third contention must be dismissed.

Plaintiff has not shown that the Board acted in an arbitrary or capricious manner, that its decision was unsupported by substantial evidence or that it failed to comply with its own regulations. Therefore, this court will not interfere with the Board's actions. *Dorl v. United States,* 200

Ct.Cl. 626, *cert. denied,* 414 U.S. 1032, 94 S.Ct. 461, 38 L.Ed.2d 323 (1973).

Plaintiff conceded that he could not by routing his case via the Correction Board to this court, confer on us jurisdiction to reverse the court-martial conviction for errors of a nature we could not, under *United States v. Augenblick, supra,* review if the case came to us otherwise. He expected we could remand to the Board if we could not reverse. We inquired from the bench whether any limitations on Correction Board jurisdiction exist, because of the fact that the determination complained of was a court-martial conviction. Except for the above concession, the parties briefed and argued the case as if that fact made no difference. Defendant reserved but did not reargue the point it has previously urged: if the grievance is a court-martial conviction, we have no jurisdiction at all. This is, of course, not the point we asked about. The Government contends that the finality principle under 10 U.S.C. Sec. 876 bars any collateral attack at all on a court-martial conviction in a civilian court except by habeas corpus. Our point may be considered a lesser included one. Limitations on Board jurisdiction may pass through and limit ours, so it is our duty to raise the question *sua sponte.* Since it would not affect the result here, however, we have decided this case in the previous pages, as the parties have briefed and argued it. We raise the jurisdictional point as a possible alternative ground for this decision and as notice that, for the future, counsel will be expected to discuss it when more cases of this kind come before us.

The present 10 U.S.C. Sec. 1552, the statutory charter of Boards for Correction of Military Records, had its origin as Sec. 207 of the Legislative Reorganization Act of 1946, 60 Stat. 812, 837. Under date of February 24, 1947, 40 Op. Att'y Gen. 504, Attorney General Tom Clark advised the Service Secretaries of his views as to the application of the Act to court-martial convictions. He says that to effectuate the purpose of the Act to relieve Congress of a

flood of private bills, it must be construed as including such convictions. However, it

* * * cannot be construed as permitting the reopening of the proceedings, findings, and judgments of courts-martial so as to disturb the conclusiveness of such judgments, which has long been recognized by the courts. (At 508).

He cites *Ex parte Reed,* 100 U.S. 13, 23, 25 L.Ed. 538 (1879).

The correction of the record and the issuance of a new discharge [in lieu of a dishonorable one inflicted by court-martial sentence] may be regarded as acts of clemency, or in mitigation, precisely comparable in effect to a successful appeal to the Congress for relief by private act. (At 508).

He refers to the need for maintaining systems of courts-martial which will provide effective disciplinary measures as well as insuring justice to the individual.

* * * It was clearly not the intention of the Congress to make mandatory, upon requests by interested parties, the indiscriminate and wholesale reexamination of discharges or dismissals by reason of sentences of general courts-martial. * * * Furthermore, section 207 is not to be regarded as superimposing a further means of review, freely available, upon the procedures previously set up. * * (At 509).

The finality principle referred to was at that time judge made, but upon its being made statutory, the Attorney General reaffirmed and redeclared the above principles and their continued applicability, rejecting the idea that the finality language reduced the jurisdiction of Correction Boards by implication, 41 Op. Att'y Gen. 49 (1949). These are contemporaneous pronouncements of high authority in the interpretation of the legislation they construe. In *Ray v. United States,* 453 F.2d 754, 197 Ct.Cl. 1 (1972), we called the Clark opinion a "landmark" and accorded it great weight.

It would seem to follow if they are still the law, that the plaintiff here had the same standing before the Board as if he had been applying for clemency to the Congress, or for relief of a discretionary *certiorari* type. In either event, he had no legal right to demand that the Board correct errors, not amounting to Constitutional violations, and therefore a refusal such as here occurred would not vest us with jurisdiction even if we agreed that errors occurred. In an instance of Constitutional violation, the finality doctrine might permit an exception to the foregoing. It would follow that counsel rightly conceded that we could not reverse the Board merely because we thought we perceived errors in the court-martial procedure, so long as they were not of Constitutional dimensions. A complaint, not of a court-martial conviction but of *e. g.,* an administrative discharge, would stand on a different and much stronger footing when the complaint was against the doings of Administrative Boards, adverse and perhaps even punitive to the soldier but not criminal in the nature of their jurisdiction.

As a Clemency Board, the BCMR was privileged to conduct non-adversary *ex parte* inquiries except to the extent its own internal regulations provided otherwise. This would be true even if its inquiries related to the legality of the court-martial proceedings, a subject to which, in its discretion, it would be privileged to direct them even if it was not in legal theory conducting an appellate review. It would follow the complaints here about lack of Board due process are misdirected. On deciding without a hearing not to review a court-martial it is not required to provide due process, or to put the proposition in a more modern way, what process is due is not to be ascertained by reference to proceedings of other than a clemency character. It is not at the clemency phase of the case, after all the appellate review provided by the military system is concluded, that due process as in an adversary proceeding in the constitutional sense is required. The Board is exercising a legislative function, it might be said, and is required to accord due process no more than a Congressional Committee would be.

▉ Without information which Government counsel could provide, as to the

vitality of the ideas expressed by Attorneys General in 1948 and 1949, in the present executive branch, we are unable to read and act on them with full confidence as the basis of our decisions. We ought not to be given, as here, only the option or Hobson's choice of pronouncing ourselves entirely without jurisdiction in any case involving a court-martial, or else giving the proceedings the extended and detailed review apparently assumed by both parties to be the alternative. The case would not have been appropriate for remand to the Board under the jurisprudence of this court prior to the reversal of our decision in *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), in view of our having no fault to find with the Board's previous decision. That decision removes a remand from even arguable consideration.

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is allowed, and the petition is dismissed.