Curtis A. LYONS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 353–88C.

United States Claims Court.

Nov. 22, 1989.

Curtis A. Lyons, Gate City, Virginia, pro se.

James M. Kinsella, with whom were Acting Asst. Atty. Gen., Stuart E. Schiffer, David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, Washington, D.C., for defendant. Douglas E. Wade, Office of the Judge Advocate General, U.S. Air Force, of counsel.

## OPINION

ANDEWELT, Judge.

In this military pay action, plaintiff, Curtis A. Lyons, appearing *pro se*, seeks disability payments relating to an injury he incurred while serving in the United States Air Force (Air Force). At the time of his discharge, plaintiff was not classified as disabled and unfit for continued military service, but he later sought to have his classification changed. Plaintiff filed the instant action after the Air Force Board for Correction of Military Records (AFBCMR) refused to modify plaintiff's military records to indicate that he had sustained a disqualifying disability while on active duty. This action is presently before the court on defendant's motion for summary judgment. For the reasons set forth herein, defendant's motion is granted and the complaint shall be dismissed.

### Facts [1]

Plaintiff's disability claim relates to an accident that occurred in 1977 while plaintiff was stationed at Tinker Air Force Base (Tinker AFB), Oklahoma. On September 13, 1977, plaintiff was struck by a military van on the airbase flightline and suffered cerebral contusions and superficial abrasions. Over the next few months, plaintiff periodically visited the hospital and complained of headaches, nervousness, loss of

---

1. This discussion of the facts is derived from the parties' filings in connection with defendant's motion for summary judgment. The material facts are not in dispute.

memory, and occasional dizziness. On February 23, 1978, displaying symptoms of "depressive neurosis," plaintiff entered Tinker AFB hospital. Plaintiff traced his illness directly back to the 1977 accident. However, plaintiff's evaluating psychiatrist reserved judgment, and on February 27, 1978, returned plaintiff to active duty and began to treat him through outpatient psychotherapy.

Thereafter, on April 15, 1978, military police arrested plaintiff for theft and on the following June 16 plaintiff was involved in an altercation with another airman. Based on these offenses, plaintiff was reprimanded, demoted, and fined. Less than one week later, on June 20, civilian police arrested plaintiff for burglary and sex offenses and plaintiff was subsequently convicted on October 3, 1978. He served a total of 2½ months in an Oklahoma jail.

On December 27, 1978, plaintiff demanded emergency mental health care for severe headaches and continued outbursts of anger of which he claimed he had no recollection. Plaintiff was transferred to Sheppard Air Force Base where he was hospitalized for 26 days and underwent psychological and neurological evaluation. The resulting medical report, dated January 23, 1979, reviewed plaintiff's military and psychological history, including the accident at issue. The report provided the following diagnosis of plaintiff's personality: "mixed personality disorder, immature, passive aggressive." The report concluded that plaintiff had "minimal" impairment for military duty and that his prognosis for military life was "satisfactory." The report recommended that plaintiff "continue in the Air Force," however, "if it is found that his personality problems interfere with his function in the military it is recommended that he should be considered for administrative separation." With respect to plaintiff's contention that his headaches stemmed from the 1977 accident, the report concluded that plaintiff's neurological evaluation was "within normal limits" and that headaches are not uncommon symptoms of chronic residuals of cerebral concussions, but that plaintiff's "[s]omatic complaints ... are very questionable, as far as being caused by any organic problem." The psychological consultant concluded that plaintiff was both "admitt[ing] to psychological problems and trying to appear psychologically sound" and that such individuals "often demonstrate somatic ... complaints without adequate physical pathology."

On January 31, 1979, plaintiff's commanding officer requested that plaintiff be administratively discharged under other than honorable conditions. Under the heading "Reason for Action Recommended," the request listed the specific instances of military misconduct and criminal behavior described above and the results of the January 23 mental health evaluation. On May 25, 1979, a medical sanity board convened to evaluate plaintiff's competency. The board concluded that plaintiff "did not ..., as a result of mental disease or defect, lack substantial capacity to appreciate the criminality of his [past acts]" and that he was able to understand and participate in his defense. On June 12, 1979, plaintiff waived his right to a hearing before a discharge review board, and his discharge became effective June 15, 1979.

In 1980, plaintiff was convicted for a shooting in Colorado and was incarcerated in a psychiatric ward until April 1984. In September 1981 and again in May 1984, plaintiff applied for social security disability benefits. The first application was denied but in April 1985, the second was granted. In granting plaintiff's second application, the administrative law judge relied upon the psychiatric evaluations of Dr. Jonathan Ritvo, who examined plaintiff in June 1984, and Dr. Glenn Gravelle, who conducted a mental evaluation of plaintiff in January 1985. Dr. Ritvo diagnosed plaintiff as having a "severe chronic brain syndrome" and a "dementia which [caused] memory impairment and loss of intellectual abilities." Dr. Gravelle came to a contrary diagnosis and characterized plaintiff as a paranoid schizophrenic. In his decision, the administrative law judge concluded that plaintiff should be designated disabled as of May 23, 1984. The judge found that "the record does not establish a disabling

impairment until the filing of the recent applications in May of 1984."

In 1983, plaintiff petitioned the Air Force Discharge Review Board (the Board) to upgrade his discharge to honorable and to change the reason for his separation. The Board concluded "that [plaintiff's] discharge was consistent with the procedural and substantive requirements of the discharge regulation and was within the discretion of the discharge authority and that [plaintiff] was provided full administrative due process." Nevertheless, the Board decided to upgrade plaintiff's discharge to honorable and to change the reason for his discharge to "Convenience of the Government." The Board concluded that "sufficient doubt exist[ed] regarding all the attending circumstances surrounding [plaintiff's] accident, medical condition and subsequent misconduct to warrant [these changes] on the basis of equity."

In October 1985, plaintiff filed an application with the AFBCMR requesting a change in his military records to show, *inter alia,* that he was disabled while on active duty. While this request was pending, the Veterans Administration (VA) issued a disability evaluation which awarded plaintiff a service-connected disability for "atypical paranoid psychosis with organic brain syndrome secondary to cerebral trauma," with a disability rating of 30 percent from May 12, 1985, and 100 percent from May 2, 1986.

On September 4, 1986, the AFBCMR denied plaintiff's application for correction of his military records on the ground that the evidence submitted did not demonstrate the existence of probable material error or injustice.[2] In addition to the documents in the record, the AFBCMR relied on an advisory opinion supplied by the Air Force Office of the Surgeon General which, based on an evaluation of plaintiff's military records, concluded that plaintiff was fit and medically qualified for continued military service at the time of his discharge. By letter, the AFBCMR provided plaintiff with a copy of the advisory opinion and

sought his written comments, including "any statements in the advisory with which [he] disagree[d]" and any "new evidence which would significantly impact upon the issues involved in [his] case."

On December 21, 1986, plaintiff requested reconsideration of the AFBCMR's decision. On that date, and again on January 14 and February 3, 1987, plaintiff submitted additional evidence which included an eyewitness' account of the severity of the 1977 accident and a certified mail receipt showing plaintiff's prior submission of the VA medical evaluation. On March 19, 1987, the AFBCMR initially advised plaintiff that this additional evidence did not show that he had been unfit for continued military duty at the time of his discharge and, therefore, his request could not be granted. On June 4, 1987, however, the AFBCMR referred plaintiff's additional evidence, including the VA medical evaluation, to the Air Force Office of the Surgeon General for further comment. After a review of the VA report, the Office of the Surgeon General reaffirmed its prior conclusion that plaintiff was fit and medically qualified when discharged and noted that "[t]he mere fact [plaintiff] was granted VA compensation does not establish eligibility for medical separation."

The AFBCMR refused to grant plaintiff a personal hearing and on November 16, 1987, denied plaintiff's request for correction of records. The AFBCMR concluded that although plaintiff "did have some medical problems while on active duty, none of these problems were of sufficient severity to justify a finding of unfit ... at the time of his separation from the Air Force." Plaintiff filed this action on June 15, 1988, in which he alleges that he qualified for a medical separation at the time of his discharge and, consequently, that he is entitled to recover disability pay.

*Discussion*

I.

 To be entitled to a medical separation from service, a service member must

---

**2.** Although the AFBCMR concluded that the request was not timely filed, based on equitable concerns, it decided to reach the merits.

be "unfit to perform the duties of his office, grade, rank, or rating because of physical disability incurred while entitled to basic pay." 10 U.S.C. § 1201. In the military pay area where a serviceman's claim has been denied by a military corrections board, this court's authority is generally "limited to determining whether the decision of the Correction Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *De Cicco v. United States*, 230 Ct.Cl. 224, 228–29, 677 F.2d 66, 70 (1982). *See also Craft v. United States*, 210 Ct.Cl. 170, 179, 544 F.2d 468, 473 (1976); *Harris v. United States*, 177 Ct.Cl. 538, 541 (1966). In the subcategory of disability retirement claims, the law is clear that a plaintiff is entitled to supplement the administrative record, *inter alia*, to fill any gaps in the record and to provide post-separation information. *See Beckham v. United States*, 179 Ct.Cl. 539, 544, 375 F.2d 782, 785 (1967); *Brown v. United States*, 184 Ct.Cl. 501, 512, 396 F.2d 989, 996–97 (1968).[3] If new evidence is offered, the court must then determine "if the Board decision is supported by substantial evidence ... when compared with all available evidence—that is both the record and *de novo* evidence." *Beckham*, 179 Ct.Cl. at 544, 375 F.2d at 785.

Consistent with this standard for review, to assure that plaintiff, appearing *pro se*, had presented his best arguments in responding to defendant's motion for summary judgment, the court ordered plaintiff to file a supplemental memorandum that identified with specificity the relevant documents to which he has been denied access by the Air Force, the relevant documents he was denied an opportunity to present to the AFBCMR, any other documents relevant to his claim that are not part of the administrative record, and the evidence not presently in the record that he would elicit in a trial on the merits. In a July 31, 1989, response, plaintiff listed the additional evidence upon which he intended to rely, which consisted, *inter alia*, of documents in his own possession and documents that he believed to be in the possession of the Air Force. Plaintiff submitted the documents in his possession and the Air Force subsequently submitted the documents on plaintiff's list that it could locate.[4]

II.

■ Upon review of both the administrative record and all of the supplemental evidence submitted, this court concludes that the AFBCMR's decision is supported by substantial evidence and that defendant's summary judgment motion should be granted. The record makes clear that plaintiff suffered physical injuries in the September 13, 1977, accident. But the record supports the conclusion that these injuries did not render plaintiff physically unfit to perform his duties at the time he was discharged.[5]

The most significant evidence supporting plaintiff's contention that the September

---

3. In *Long v. United States*, 12 Cl.Ct. 174 (1987), Judge Bruggink concluded that in military pay cases other than those involving disability retirement, a plaintiff should not have the right to supplement the record.

4. Pursuant to Air Force regulations, Air Force records concerning the investigation of the September 13, 1977, accident were destroyed after five years and, hence, were not available. In addition, the Air Force sought to retrieve all of plaintiff's medical records from storage centers and Air Force hospitals but, despite such a search, it was not able to locate certain records, including hospital in-patient records. However, the administrative record includes detailed treatment summaries and physical and psychological evaluations relating to plaintiff's in-patient care. In view of the detailed evidence in the record discussing plaintiff's medical status, the unavailability of other documents does not render the AFBCMR's decision arbitrary or capricious. There is no reason to conclude that the missing medical documents contain evidence that would undermine the AFBCMR's conclusions.

5. Plaintiff makes certain factual allegations that are not specifically discussed in this opinion. These allegations do not focus on plaintiff's fitness to perform his duties at the time of his discharge and, hence, are not material to resolution of defendant's motion for summary judgment. For example, plaintiff alleges that after he was arrested on civil charges in Oklahoma, he did not inform his defense attorney of the September 13, 1977, accident because his commanding officer had ordered him not to discuss the accident with anyone.

13, 1977, accident ultimately rendered him unfit for military service is the subsequent disability decision by the VA.[6] In the documents supporting that decision, three doctors diagnosed plaintiff as suffering from "atypical paranoid psychosis" and "organic brain syndrome with mild impairment, secondary to cerebral trauma." "Based on available medical evidence," the doctors expressed the opinion that plaintiff "had the onset of psychiatric disorder while on active duty, first manifested in early 1978."

■ But the existence of medical opinions that tend to support a contrary conclusion does not render the AFBCMR's decision arbitrary, capricious, or unsupported by substantial evidence. As explained above, plaintiff was subjected to hospitalization and extensive testing after the 1977 accident. Moreover, shortly before his discharge, plaintiff was hospitalized for 26 days during which time he was subjected to extensive psychological and neurological evaluation. The conclusion at that time, based on all of the medical evidence, was that plaintiff had only minor psychological impairment and remained fit for military service. There is no diagnosis prior to his discharge to the effect that plaintiff had an organic brain syndrome, much less that he had suffered any physical brain damage during his military service.

As explained above, the AFBCMR did not rely exclusively upon its own interpretation of plaintiff's medical records but also secured a report from the Air Force Office of the Surgeon General. In that report, Dr. (Colonel) Bonner concluded that the "[e]vidence of record established beyond all reasonable doubt that [plaintiff] was medically qualified for continued active duty, that he was not psychotic, neurotic, or suffering from organic brain disorder." He explained his conclusion as follows:

Evidence of record shows that while [plaintiff] did have some medical problems while on active duty, none of them were of sufficient severity to justify a

finding of unfit. [Plaintiff] has always contended that his antisocial actions were caused by a minor head injury that he suffered when hit by a van in 1977. A characteristic trait of individuals with personality disorders is to blame their inappropriate actions on other people, things, or events. [Plaintiff] is no different in that respect. It must be clearly understood that [plaintiff] was evaluated on three different occasions by qualified psychiatrists at Sheppard AFB, Tx and Wildford Hall Medical Center and there was never any evidence of a psychosis, neurosis, or organic brain damage. Psychological testing revealed results consistent only with a personality disorder. Psychological testing is very accurate in identifying organicity if it is present and in this case it was not. There was clear evidence of a personality disorder long before [plaintiff] entered the Air Force.... All available medical records indicate that [plaintiff's] paranoid schizophrenia started in 1984 (long after he separated from the Air Force) and not before.

Moreover, after plaintiff asked for reconsideration based, *inter alia,* on the VA evaluations, the AFBCMR again referred the matter to the Office of the Surgeon General. After a second review, Dr. (Colonel) Mapes and a consultant psychiatrist both agreed that the prior position of Dr. Bonner was correct. Dr. Mapes stated that "[t]he fact remains that [plaintiff] did not become psychotic until several years after his separation from active duty and thorough psychological testing prior to his separation failed to demonstrate any organic brain syndrome."

Clearly, the record demonstrates some disagreement among medical professionals concerning whether and to what extent plaintiff suffered permanent physical disability as a result of the 1977 accident. However, the issue before this court is not which of the differing views is correct but rather whether the AFBCMR's decision

---

**6.** The Social Security Administration (SSA) decision does not significantly aid plaintiff. As noted above, while the SSA found plaintiff disabled as that term is defined by the SSA, it refused to grant benefits retroactive to plaintiff's first SSA application in 1981 because "the record does not establish a disabling impairment until the filing of the recent applications in May of 1984."

was arbitrary, capricious, unsupported by substantial evidence, or contrary to statutes or regulations. Viewing the evidence in its entirety, the AFBCMR's decision passes that test. The Office of the Surgeon General considered the medical evidence and appeared to make firm and reasonable medical conclusions based upon it. While the VA doctors came to an apparently contrary conclusion, the VA evaluation does not indicate any basic flaw in the Office of the Surgeon General's method of analysis, and the VA did not make any specific finding as to plaintiff's fitness for service at the time of discharge. In this context, it clearly was reasonable for the AFBCMR to rely upon the record before it, including the evaluation of the Office of the Surgeon General, and to refuse to modify plaintiff's records.[7]

### III.

Plaintiff contends that the AFBCMR was arbitrary and capricious and violated his constitutional rights when it denied plaintiff's request for a hearing and when it relied on medical opinions by individuals whom plaintiff had not had an opportunity to examine. But neither of these actions

was an abuse of the discretion allowed the AFBCMR.

■ As to the denial of a hearing, the controlling statutes and regulations do not guarantee petitioners a hearing before a corrections board. The AFBCMR's review of a serviceman's record is a search for "the existence of an error or an injustice." 32 C.F.R. § 865.3 (1986). The review is nonadversarial in nature (*Armstrong v. United States*, 205 Ct.Cl. 754, 764 (1974); *Flute v. United States*, 210 Ct.Cl. 34, 40–41, 535 F.2d 624, 628 (1976)), and the regulations grant the AFBCMR discretion "to determine whether to authorize a hearing, [to] recommend[ ] that the records be corrected without a hearing, or to deny the application without a hearing." 32 C.F.R. § 865.9(a) (1986).[8] Plaintiff has not presented any evidence to suggest that a denial of a hearing in this case was unreasonable.

■ As to the AFBCMR's use of the Office of the Surgeon General's ex parte medical opinions, the AFBCMR has considerable discretion as to the type of evidence it may consider. "[T]he Board may require the applicant to obtain, or [it] may obtain, such further information as it may consider

---

7. Plaintiff also attacks the AFBCMR's decision based on his allegation that when he waived his right to a hearing before a discharge review board in 1979, he did so based on the advice of military counsel that his discharge would be on medical rather than misconduct grounds. But the central issue before this court is whether at the time of his discharge plaintiff was unfit for duty as a result of a physical disability incurred during his military service. The quality of his counsel's advice at the time of plaintiff's discharge does not directly impact this essentially medical inquiry. In addition, even if plaintiff had requested a hearing before a discharge review board, the applicable regulations prohibit such a board from "mak[ing] a finding concerning the member's medical fitness for continued service." AFM 39–12, Chapter 3, ¶ 3–1. In any event, the documents presented by defendant indicate that in fact defendant advised plaintiff that the proposed discharge was on misconduct grounds. The Air Force's notification to plaintiff explained the allegations of misconduct in detail. The receipt plaintiff signed acknowledging this notification states that plaintiff understood that "approval of [the] recommendation for [his] discharge would result in [him] being given a discharge certificate less favorable

than an honorable one." Similarly, the document plaintiff signed waiving a hearing before a discharge review board states that his discharge was for misconduct. Plaintiff has not presented any evidence to support his allegation that he received contrary advice from counsel, much less evidence that would implicate defendant directly in any error by plaintiff's counsel. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562–63 (Fed.Cir.1987).

8. By letter to the AFBCMR, a Deputy Assistant Secretary of the Air Force expressed concern that plaintiff might not be able to explain fully his case in writing and that a full and fair consideration of the case might require a formal hearing with plaintiff present. However, the Executive Director of the AFBCMR solicited the views of its members, and two of the three members objected to having an oral hearing. In denying the request for a hearing, the AFBCMR stated that it had "thoroughly reviewed [plaintiff's] complete submission, and ... [did] not find that a personal appearance with or without counsel [would] materially add to [its] understanding of the issue(s) involved."

essential to a complete and impartial determination of the facts and issues." 32 C.F.R. § 865.18(b) (1986). The use of an ex parte advisory medical opinion is not uncommon. There is "a long established practice [of military corrections boards] seek[ing] advisory opinions in evaluating an applicant's record of fitness for service and a hearing is not required on these matters since the [corrections board's] function does not involve conducting adversary proceedings." *Armstrong*, 205 Ct.Cl. at 764 (citation omitted). The applicable regulations merely require that a corrections board provide an applicant access to the further evidence developed and allow him to "submit additional comment with regard to the evidence," 32 C.F.R. § 865.18(b) (1986). As noted above, the AFBCMR satisfied this requirement.

Defendant has filed a properly supported summary judgment motion demonstrating the absence of any dispute as to a material fact and that defendant is entitled to judgment as a matter of law. In response, plaintiff has failed to demonstrate either the existence of a dispute as to a material issue of fact or that defendant is not entitled to judgment as a matter of law. Defendant's motion for summary judgment therefore must be granted. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987).

### *Conclusion*

For the reasons set forth above, defendant's motion for summary judgment is granted and the Clerk of the Court shall dismiss the complaint. No costs.

IT IS SO ORDERED.