Dennis P. COVILL, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 90–2196.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 12, 1991.

Decided March 17, 1992.

---

Joseph A. Greenleaf (argued and briefed), Port Sanilac, Mich., for plaintiff-appellant.

Kathleen Moro Nesi, Asst. U.S. Atty. (argued and briefed), Detroit, Mich., for defendant-appellee.

Before KEITH and MARTIN, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.

KRUPANSKY, Senior Circuit Judge.

The plaintiff, Dennis P. Covill (Covill), timely appealed the district court's judgment in favor of defendant United States Coast Guard (Coast Guard) denying him declaratory relief to restore him to the rank of Coast Guard Chief Warrant Officer (CWO), W–4, and the difference in retirement pay and benefits between the rank of W–3 and W–4, retroactive to the date of his demotion, plus interest, costs and attorney's fees.[1] In his complaint, plaintiff argued that he had been improperly retired from the Coast Guard at grade CWO, W–3, instead of W–4, because the Secretary had evaluated his retirement grade by considering his entire performance while he served in grade W–4 instead of limiting his performance to the first 30 days of service in that grade, contrary to the warrant officer retirement statute, 10 U.S.C. § 1371 (1956).

Secondly, he charged that his constitutional right to due process as guaranteed by the Fifth Amendment had been violated during the administrative military review proceedings.[2] In an order granting defendant partial summary judgment, the district court concluded that 10 U.S.C. § 1371 was unambiguous and dispositive of the instant controversy. It reasoned that pursuant to the statute, the Coast Guard had properly considered plaintiff's entire performance while he served in the temporary higher grade of CWO, W–4 to determine his retirement rank. Further, in a memorandum opinion, the district court determined that plaintiff's due process rights had not been violated during the administrative review of his records.

The district court's memorandum opinion summarized the facts of the instant case in a concise manner. Plaintiff had served in the Coast Guard for over twenty years during which he had achieved the permanent rank of CWO, W–3. The last three years of his enlistment had been served in the temporary rank of CWO, W–4. During his third year of service in the higher grade, plaintiff had received a Punitive Letter of Reprimand (Letter) because he had purchased merchandise from the Coast Guard Group Non–Appropriated Fund Activity purportedly for personal use and consumption, but instead, had used the purchased merchandise in his restaurant where he had resold it at retail to the general public.[3] Plaintiff had not appealed his nonjudicial punishment. Following the release of this Letter, plaintiff had received an Officer Performance Report (OPR "A") which had rated his performance as satisfactory, however, the rating had not referenced the Letter. Thereafter, he had received another OPR (OPR "B") which referenced the Letter and had downgraded his performance to unsatisfactory. Both OPR

---

**1.** Because the appellant waived recovery of any amounts above $10,000, this action was within the jurisdiction of the district court pursuant to the Tucker Act, 28 U.S.C. § 1346(a)(2)(1976).

**2.** Plaintiff also asserted an equal protection assignment of error; however, he withdrew this claim after the defendant contested that such

action was not asserted at the district level, and therefore, was not properly before the appellate court.

**3.** Plaintiff purchased food, grocery items and a mixer which he used in his restaurant which he planned to operate after his retirement.

"A" and OPR "B" had been marked as special reports[4] and had addressed the same performance time period.[5] The plaintiff had attempted to have OPR "B" removed from his record in an effort to reverse the Coast Guard's decision to retire him at the lower rank.

Subsequent to its initial administrative review to determine plaintiff's retirement rank, the Coast Guard's Chief of Office of Personnel concluded that the incident referred to in the Letter constituted improper conduct of sufficient weight to characterize his performance in grade CWO, W-4 as unsatisfactory and decided to retire him at his lower permanent grade of CWO, W-3. Thereafter, the Special Board[6] reviewed plaintiff's record and considered the plaintiff's entire service performance in the temporary higher grade pursuant to Article 12-C-15.g(2) of the Coast Guard Personnel Manual and recommended that the Commandant retire the appellant at the lower rank of CWO, W-3.[7] The Special Board based its decision on plaintiff's Letter. The Commandant adopted the Special Board's recommendation.

Plaintiff, thereafter, appealed the Commandant's disposition to the Personnel Records Review Board (PRRB) and then to the Board for the Correction of Military Records (BCMR).[8] Throughout his appeal, plaintiff has charged that the Coast Guard misinterpreted 10 U.S.C. § 1371 and erroneously considered OPR "B" in arriving at its decision[9] which violated his procedural due process rights.[10] Upon final review, the Coast Guard BCMR affirmed the Commandant's decision to retire plaintiff at the lower grade of W-3.

Having exhausted his administrative remedies, the plaintiff commenced the instant action against the United States on October 27, 1988, seeking a declaratory judgment to retire him as a CWO, W-4. Plaintiff filed a partial motion for summary judgment wherein he charged that the Secretary's decision to retire him at the lower grade was contrary to 10 U.S.C. § 1371 (1956). Specifically, he has argued that pursuant to the statute, his retirement grade vested immediately upon satisfactory performance during the initial 30 days of service in the temporary rank of CWO, W-4, and that the Secretary was precluded from considering his performance in grade CWO, W-4 after his first 30 days of service in the higher rank for purposes of determining his retirement grade. Research has disclosed no existing precedent to support his position. The Coast Guard has responded by asserting that the 30 day satisfactory service requirement referenced in

---

4. A special report is a report submitted upon final completion of criminal, other disciplinary, or investigative action concerning the officer's performance upon which he is evaluated. The report incorporates the reporting period which was the subject of the investigation.

5. The contents of the OPRs were virtually identical except that OPR "B" had considered the substance of the Letter and had been revised to reflect the period of evaluation from December 1, 1983–April 13, 1984, instead of December 1, 1983–March 26, 1984. Although the Letter was dated March 23, 1984 and referred to appellant's illicit conduct which had occurred from October, 1982 to July, 1983, the PRRB and BCMR concluded that OPR "B" reflected the performance for the period cited in the Letter.

6. When the initial administrative review results in an unsatisfactory service determination, the disposition is referred to a Special Board of officers. Subsequent to a review, the Special Board submits a recommendation to the Commandant for a final decision.

7. Article 12-C-15.g(2) provides:

Service will be considered satisfactory and the individual will be certified to the highest grade if he/she has served on active duty for a minimum of 6 months in a commissioned officer grade, *or 31 days in a chief warrant or warrant officer and his/her official records indicate overall satisfactory performance for the entire period served in the higher grade.*

8. Plaintiff had initiated this action in district court, however, it was dismissed for failure to exhaust his administrative remedies.

9. The district court concluded that consideration of OPR "B" by the Office of Personnel and the Special Board was inconsequential because the Letter had been incorporated into the plaintiff's permanent records file and could be reviewed to determine plaintiff's retirement level.

10. Plaintiff argued that his due process rights were violated when he was affirmatively denied hearings before the Special Board, the PRRB, and the BCMR.

the statute constituted a condition precedent for retirement consideration at a rank above a CWO's permanent grade. The court granted partial summary judgment in favor of the Coast Guard stating as a matter of law the following:

> The parties have cited no cases and this Court has found none which has construed § 1371 in the 35 years since its enactment. Nevertheless, this Court finds the clear meaning of § 1371 to be unambiguous and dispositive. As a result, the Court finds the 30 days in § 1371 to be a minimum period for time in grade, and not a minimum period of satisfactory service. Therefore, the Court finds that under § 1371 the Commandant may consider Plaintiff's entire service in grade to set his retirement rank.

Consequently, the Office of Personnel and the Special Board had correctly considered plaintiff's entire service in the higher temporary grade in determining whether his performance had been satisfactory. Furthermore, the PRRB and BCMR had properly concluded that there had been no error or injustice in the decision to follow the Coast Guard regulation, Article 12–c–15.–g(2), and retire plaintiff at his permanent grade of CWO, W–3, because this regulation was consistent with 10 U.S.C. § 1371.

In its memorandum opinion, the district court concluded that the decisions by the Special Board, PRRB and BCMR to affirmatively deny plaintiff a hearing and the PRRB's and BCMR's refusal to alter plaintiff's military records were not arbitrary and capricious. The court further determined that plaintiff failed to prove that the Coast Guard had violated its own procedures. Therefore, the plaintiff was afforded all process due to protect his rights. A timely notice of appeal had been filed on October 18, 1990.

■ Questions of law, including those concerning motions for summary judgment, are reviewed by the court of appeals de novo. *In re Vause v. Capital Poly Bag, Inc.*, 886 F.2d 794 (6th Cir.1989); *Garrett v. Lehman*, 751 F.2d 997 (9th Cir. 1985). In considering the meaning of 10 U.S.C. § 1371, this appellate review is directed, in the first instance, to assign to the words of the controversial language of the statutory enactment their " 'ordinary, contemporary, common meaning.' " *In re Revco D.S., Inc.*, 898 F.2d 498, 500 (6th Cir.1990) (quoting *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)). This court notes that "[i]f the statutory language is unambiguous, in the absence of a 'clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.' " *United States v. Premises Known as 8584 Old Brownsville Rd.*, 736 F.2d 1129, 1130 (6th Cir.1984) (quoting *Consumer Products Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). If this court determines that the language of the statute is ambiguous then precedent dictates a review of the legislative history of the enactment. *See United States v. Barry*, 888 F.2d 1092 (6th Cir.1989).

■ The Warrant Officer Retirement Act, 10 U.S.C. § 1371 (1956), reads as follows:

> Unless entitled to a higher retired grade under some other provision of law, a warrant officer retires, as determined by the Secretary concerned, in the permanent regular or reserve warrant officer grade, if any, that he held on the day before the date of his retirement, or *in any higher warrant officer grade in which he served on active duty satisfactorily, as determined by the Secretary, for a period of more than 30 days.*

(emphasis added). This court finds no ambiguity in the language of the legislation. A CWO may be considered for retirement, within the discretion of the Secretary, in any higher grade in which he has served satisfactorily on active duty for a period of *more than 30 days.* Accordingly, his entire performance record in the higher grade in which he had served "for a period of more than 30 days" was subject to the Secretary's evaluation.

This interpretation is supported by the Claims Court's interpretation of similar statutes enacted to address retirement pro-

motions by the Army and Air Force. For example, in *Randolph v. United States*, 179 Ct.Cl. 425, 433 (1967), the court interpreted an Air Force retirement statute [11] concluding that the Secretary was permitted to view Randolph's entire service record to determine if his performance was satisfactory in the higher temporary grade. The facts in *Randolph* parallel those in the instant action. After twenty-three years of total service in the Air Force, Randolph was retired at the grade of lieutenant colonel even though he had performed satisfactorily for sixteen of those years in the temporary grade of colonel. *Id.* at 427. Months before his retirement, however, Randolph had pleaded guilty to misdemeanor charges of converting certain property for his own use. *Id.* at 428. He had argued that it was inconceivable that such an incident was of sufficient weight to overcome the presumption of satisfactory service reflected by twenty-three years of spotless performance evaluations. *Id.* at 430. However, the court permitted the Secretary to consider Randolph's entire service in the temporary grade to determine his retirement rank, rather than limiting the Secretary's consideration to Randolph's first six months of service in his higher grade.

Similarly, in *Brown v. United States*, 4 Cl.Ct. 175 (1983), the court addressed the interpretation of 10 U.S.C. § 3963(a) [12] which governed the retirement grade of commissioned Army officers who had served in a temporary grade for more than six months. Brown remained on active duty as a commissioned officer for twenty-three years and eleven months before voluntarily retiring on July 31, 1980. *Id.* at 176. He was appointed to the temporary grade of colonel effective April 1, 1978,

however, was retired as a lieutenant colonel. *Id.* Prior to retirement in 1980, Brown was charged with dereliction of duty which resulted in a recommendation that he receive nonjudicial punishment. *Id.* Brown urged that only his conduct during the first six months of his service in the temporary grade could be considered by the Secretary to determine his retirement in the higher temporary grade. *Id.* at 180 n. 3. In response, the court concluded:

> plaintiff's activities beyond six months after his April 1, 1978 promotion through January 4, 1979.... provided substantial evidence upon which the Secretary could determine that plaintiff's service during the six months after his appointment to the temporary grade of colonel was not satisfactory.

*Id.* at 181.

This court concludes, as did the district court, that the warrant officer retirement statute, 10 U.S.C. § 1371, is unambiguous and tracks the language of both the Army and Air Force retirement statutes. A review of the legislative history of 10 U.S.C. § 1371 is therefore unnecessary. Accordingly, § 1371 mandates that a warrant officer must first serve at least 30 days in a higher temporary grade before qualifying for the retirement benefits of that grade. When the warrant officer has satisfied the initial mandatory minimum service requirements in the temporary higher grade, the Secretary may thereafter consider the warrant officer's entire service in the higher temporary grade to determine if his service has been sufficiently satisfactory to warrant retirement pay in the higher grade.

Covill's second assignment of error is equally without merit. He has charged

---

11. The Air Force retirement statute stated in pertinent part:

A regular commissioned officer who is retired, or a reserve commissioned officer who is retired or to whom retired pay is granted, is entitled to a retired grade equal to the highest temporary grade in which he served *on active duty satisfactorily, as determined by the Secretary of the Air Force, for not less than six months.*

10 U.S.C. § 8963(a) (1959) (repealed 1985) (emphasis added).

12. The Army retirement statute provided in pertinent part:

A regular commissioned officer ... is entitled to a retired grade equal to the highest temporary grade in the Army in which he served on active duty satisfactorily, as determined by the Secretary of the Army, *for not less than six months.*

10 U.S.C. § 3963(a) (1959) (repealed 1985) (emphasis added).

that his constitutional right to due process as guaranteed by the Fifth Amendment had been violated during the administrative military review proceedings. The district court correctly concluded that plaintiff had not been denied due process of the law when he was not afforded a hearing at various levels of the administrative review because such action was not arbitrary and capricious or unsupported by substantial evidence. *Flute v. United States*, 535 F.2d 624, 210 Ct.Cl. 34 (1976).

Moreover, this court is without authority to reverse a decision of the Coast Guard Board for the Correction of Military Records unless it is:

> found to be arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or [is] contrary to applicable laws and regulations.

*Grieg v. United States*, 640 F.2d 1261, 226 Ct.Cl. 258 (1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *see Chappell v. Wallace*, 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983); *Garrett v. Lehman*, 751 F.2d 997 (9th Cir. 1985); *Flute*, 535 F.2d at 624. Plaintiff has failed to prove that the actions taken by the Coast Guard BCMR in the instant case were arbitrary, capricious or unsupported by substantial evidence. Further, he did not prove that the Coast Guard acted contrary to its applicable administrative regulations. Accordingly, this second assignment of error is not well taken. Having considered the plaintiff's remaining assignments of error, this court concludes that they are equally without merit.

Upon review of the pleadings, the record in its entirety, the briefs and arguments of counsel, the district court's disposition is hereby AFFIRMED.